Barrett *v.* Barrett.

ALBINA BARRETT

*v.*

MATTHEW BARRETT.

There must be cogent reasons to induce the court to reduce the amount of permanent alimony, for the payment of which security has been given, especially where the wife is unable to do anything towards her own support.

Suit for divorce. On petition for reduction of alimony, and master's report thereon and exceptions thereto.

*Mr. J. F. Cahill,* for the exceptions.

*Mr. Z. M. Ward, contra.*

THE CHANCELLOR.

A divorce for desertion was granted in this cause, with permanent alimony and counsel fees. *Barrett* v. *Barrett, 10 Stew. Eq. 29.* The alimony was fixed, by order of January 14th, 1884, upon a reference, at $30 a month, and the defendant was required to give security for the payment thereof, which he did. He, by petition of May 6th, 1885, asked for a reduction of the amount on the ground of his inability to pay so much. The master to whom the petition was referred reported that the amount should be reduced to $18 a month. Mrs. Barrett has excepted to the

report. According to the report, the circumstances of the parties are not materially different from what they were when the decree for alimony was made, except so far as the financial resources of the defendant are concerned. One of the reasons which the master gives for the reduction which he recommends is that at the time when the order of 1884 was made the defendant was worth $3,200, whereas he is now worth only $2,200; and he states that the defendant's present financial condition is as follows: he has $2,500 on deposit in the hands of his surety upon the bond which he gave to secure the permanent alimony in this cause, and $300 in stock in trade and fixtures in his store (he is a retail liquor dealer in Paterson), altogether $2,800, and he owes $600. So that he is now worth but $2,200, as before stated. The master gives another reason, as follows: that the defendant's purchases of stock in trade in 1883 amounted to between $1,800 and $2,000, and his receipts to about $3,700; that the profits on the amount of the purchases were about one hundred per cent. and about fifty per cent. on the amount of the sales, and his expenses in the business about $2,600, leaving a net profit of about $1,100; that for the last year his purchases amounted to about $1,200 or $1,300, and his receipts to $2,400 or $2,600, and his profits, at the same rates as before mentioned, would be about $1,200 or $1,300, from which $600 are to be deducted for his expenses, leaving a net gain of only $700 as against $1,100 in 1883.

Mrs. Barrett is about sixty years old, and, irrespective of her age, is incapacitated for work by the result of an accident—a fall—which occurred after this suit was brought, and by which one of her legs was broken in two places. The amount of alimony ($30 a month or $360 a year) which was awarded to her by the before-mentioned order of 1884, is not more than enough for her comfortable support, and, under the circumstances, if it is to be reduced, there should be cogent reasons for doing so. Such reasons do not exist. When the first report on the subject of permanent alimony was made, the defendant had $3,200 invested in his business. Of that money he still has $2,500 deposited in the hands of his surety. He does not say whether it bears interest or not,

but if invested at six per cent. he would derive $150 per annum therefrom, and at five per cent., $125 per annum.   There appears to be no good reason for the alleged diminution of the amount of profits of his business.   Indeed, it does not satisfactorily appear that there has been any diminution thereof.   In the examination under the order of reference of 1883, under which the report of 1884 was made, he produced two books, kept by him, which he swore contained his daily receipts from his business. Not only did he produce no books in the examination under the order of reference upon the petition for reduction of alimony, but he swore that he never kept any books at all, and that all he kept was a " little memorandum on the slate from day to day." He supported himself and an unmarried adult daughter.   His indebtedness is not much greater than it was in 1883.   Then he owed about $400 to Heller Brothers for liquor bought of them. Now he says he owes them about $565, the amount of a judgment recovered by them against him, besides costs and interest ; and he testifies that all he owes besides is some trifling debts, amounting to $15 or $20, perhaps.   There is reason to believe that the proceedings of Heller Brothers in obtaining that judgment were entirely amicable.   But, however that may be, he shows no losses, but alleges that his business has diminished and the diminution is due to the fact that he has been required to pay the alimony. The master by whom the report of 1884 was made fixed the alimony with reference to the net profits of the defendant's business, awarding $360 out of $1,100.   The obligation to support the complainant rests upon the defendant under the order of this court, and he has given security for the discharge thereof.   The interest upon the money in the hands of his surety, not invested in his business, would be enough to pay a considerable part—over one-third—of the alimony.   No misfortune has befallen him. According to his own statement (which is wholly unsupported) his net profits have been reduced by the reduction of the amount of his business, and this is the sole ground on which he claims a reduction of the alimony.   It should not be granted.   The exceptions will be allowed and the petition dismissed.   The defendant will be required to pay the complainant's costs under the

petition and a counsel fee of $25 to her counsel upon the hearing. A proper allowance of counsel fee has already been made for the services rendered in the taking of the testimony.