CASE 63—ACTION TO ENFORCE JUDGMENT FOR ALIMONY
—DEC. 7.

# Franck v. Franck.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. ALIMONY—DECREE SUBJECT TO COURT'S CONTROL.—The power of
the court over the subject-matter of alimony is not exhausted
by the entry of the original order, but is continuing for the
purpose at any time of making such alterations thereof as
shall appear to the chancellor in the exercise of the judicial
discretion reasonable and proper.

2. SAME.—Where it appears that the order for the payment of ali-
mony has remained dormant for many years; that the condi-
tions of the parties have materially altered; that the parties
have re-married, and that, under all the circumstances, it would
be inequitable to enforce the order, it is within the judicial
discretion of the chancellor to refuse to render a decree for the
purpose of enforcing the original order. In this case a decree
of the chancellor refusing to enforce the payment of alimony
which accrued subsequently to the re-marriage of plaintiff, is
affirmed.

3. APPEALS.—This court will not reverse a judgment affecting the
title to real estate where the title is vested in parties who are
not before the court in the action.

LANE & BURNETT FOR THE APPELLANT.

1. The judgment of 1879 for alimony is a continuing judgment and
the statute of limitation of this State can not apply. 2 Am.
& Eng. Ency. of Law, 140; Knapp v. Knapp, 134 Mass., 353;
Allen v. Allen, 100 Mass., 373; Wren v. Moss, 6 Ill., 560; Sloan
v. Cox, 4 Hayes, 75; Smith v. Smith, 1 Root, 349; Dinet v.
Egeninan, 80 Ill., 274; Williams v. Williams, 96 Ky., 397.

2. A decree for divorce does not affect a judgment for alimony;
an action for alimony can be joined with a divorce or it may be
prosecuted separately. 2 Am. & Eng. Ency. of Law, 138; Wil-
liams v. Williams, 4 Ky. Law Rep., 839; 27 Albany Law Journal,
177; 38 Ohio St., 370; Shepherd v. Shepherd, 1 Hun. (N. Y.), 240.

3. It was not within the power of the court to modify the judg-
ment as to the arrearages of alimony and there was no appli-
cation or prayer for the court to grant relief against future
sums.

Franck v. Franck.

HARRIS & BARR FOR THE APPELLEE.

1. Court has control of judgments for alimony. Ky. Stats., sec. 2123; McNees v. McNees, 17 Ky. Law Rep., 25.
2. It is proper to stop alimony on a second marriage. Stillman v. Stillman, 99 Ill., 196; 2 Am. & Eng. Ency. of Law, 139, note 1.
3. Title to real estate can not be tried on a rule to pay alimony. Ky. Stats., sec. 2123; Quisenberry v. Quisenberry, 1 Duv., 197; Tyler v. Tyler, 17 Ky. Law Rep., 1341.
4. Franck's will speaks as of its date. Ky. Stats., sec. 4839; Jarman on Wills, s. p. 383; Sharp v. Allen, 5 Lea, 81; Updike v. Thompkins, 100 Ill., 409.
5. Arrears of alimony. 2 vol. Am. & Eng. Ency. of Law, 140; Bishop on Marriage and Divorce, sec. 998.

(This case was argued orally by W. O. Harris for appellant and J. C. Burnett for appellee.)

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

On the 15th day of May, 1879, the following judgment was rendered in the Louisville Chancery Court in a proceeding by appellant against appellee for alimony:

"It is further ordered and considered by the court that the defendant, John L. Franck, pay unto the plaintiff, Kate Franck, the sum of $15 on the 8th day of June, 1879, and a like sum of $15 on the 8th day of every month from and after the 8th day of June, 1879, until the further order of this court. The said sum of $15 is hereby allowed plaintiff for her support and maintenance, to be paid by defendant as aforesaid."

Subsequently the appellant brought another suit in the same court, in which she was decreed an absolute divorce, and on the 24th day of January, 1889, she married one A. W. Bollinger.

Appellee never paid any part of the alimony adjudged against him in the first proceeding, and no steps were taken to enforce it until October 31, 1896, when appellant obtained a rule against appellee to show cause why he had not complied with the judgment, to which he re-

sponded—First, with a plea of limitation; and. second, he pleaded that appellant was the wife of another man, who was willing and able to support her, and that since the rendition of the judgment for divorce he had himself married again, and had five children by the second wife, who were dependent upon him for support; and, third, that he had no means out of which to pay her judgment for alimony or any part thereof.

Appellant, in her response to this reply, denied that limitation applied, or that her marriage to Bollinger annulled her judgment for alimony, or that appellee had no means with which to pay the judgment; and averred that he was the only child of J. T. Franck, who died in October, 1896, the owner of a lot on Madison avenue, and a lot on the east side of Pope street, in the city of Louisville, which were not disposed of by his will, and which descended to appellee as heir at law, and were subject to his debts, and asked that they be subjected to the payment of her judgment for alimony.

Appellee, for rejoinder to this reply of plaintiff, said that his father at the date of his death owned a piece of ground lying along the south side of Frankfort avenue, through the eastern part of which Pope street was cut; that he owned one lot east of Pope street, which was situate on the southeast corner of Frankfort avenue and Pope street; and that the remainder of the tract lay south of Frankfort avenue, and along the west side of Pope street; and further averred that his father owned, at the date of his death, the lot on Madison street, upon which he had a mortgage at the time his will was made, which mortgage was afterwards foreclosed, and the lot bought in by him for the amount of the mortgage; and he alleged that all of this property is covered by the fourth

clause of his father's will, which reads as follows: "I give and bequeath all my personal property that I have or may have after my death, to my daughter-in-law, Clara Franck; also all the ground or lots on both sides of Pope street shall belong to her; also all the ground fronting on Frankfort avenue, west of Pope street and extending back to Hunter's line; also the old dwelling house shall belong to my daughter-in-law, Clara Franck, free from the control of her husband;" and that he had no interest therein.

The motion being submitted to the chancellor upon the pleadings and exhibits, it was adjudged that there was due and owing by appellee to appellant $2,707.90, with interest from the 15th day of May, 1897, this being the amount of principal and interest due appellant, as alimony, up to her marriage, on the 24th day of January, 1889, and for which she could sue out execution. The chancellor refused to enforce the payment of any alimony which accrued subsequent to the date of the second marriage, and also refused to subject the property alleged to belong to appellee to the payment of this judgment, and to correct these alleged errors this appeal is prosecuted.

"The right to alimony, and the amount thereof, is not of strict and absolute right, but largely rests upon judicial discretion, to be exercised according to established principles of law, and upon an equitable view of all of the circumstances of the particular case." (See Bishop on Marriage and Divorce, section 996). And when the allowance is to be paid in installments fixed by the court, until changed by the further order of the court, as in this case, the power over the subject-matter of alimony is not exhausted by the entry of the

original order, but is continuing, for the purpose, at any time, of making such alterations thereof as shall appear to the chancellor, in the exercise of a judicial discretion, reasonable and proper. It may be increased or diminished or suspended altogether, as the equity of the case demands, when application is made to the chancellor for the enforcement of its payment, and in determining this question the financial condition of the parties is the question of prime importance. If the estate of the husband, or his capacity to earn money has become impaired, or the pecuniary condition of the wife has been improved by a second marriage, or she has acquired other means of support, the alimony may be discontinued or reduced. (See Stillman v. Stillman, 99 Ill., 196; [39 Am. R., 21]; Ressor v. Ressor, 82 Ill., 442.) So, on the other hand, if the wife's wants and necessities increase, and the ability of the husband to pay be increased, there may likewise be an appropriate exercise of the power of the court in the increase of the allowance.

Upon the question of enforcing the payment of alimony long in arrear, Mr. Bishop, in his work on Marriage and Divorce (section 1098), says: "As this allowance is for the wife's maintenance from year to year, the court will not ordinarily compel payment beyond a year prior to the application, unless some explanation of the delay is made or appears."

And the rule was very thoroughly established in the English ecclesiastical courts that, where both parties have long abstained from applying to the court, the one for a reduction of alimony, or the other to enforce the regular payment, it will not enforce payment of arrears beyond one year prior to the monition, without sufficient cause being shown for the

cause of the delay. (See De Blaquiere v. De Blaquiere, 5 Eng. Ecc. R., 126). And in the case of Wilson v. Wilson, upon an application by the wife to enforce a monition for the payment of alimony, the court said:

"Unless the husband is absent from the country, or some particular reasons are set forth, it would be productive of great inconvenience and injustice, if, after the lapse of so many years, the court should enforce such a monition. If the wife is aggrieved, she should make her application with. in a reasonable time; otherwise, the court will infer she has made some more beneficial arrangement. As a general rule, therefore, the court is not inclined to enforce arrears of many years' standing."

In this case, after sleeping upon her rights for nearly seventeen years, and when her own pecuniary circumstances and those of appellee have radically changed, appellant asks the court to enforce the payment of all the arrears of alimony due her under the judgment of 1879, with accrued interest, which now amounts to a very large sum, notwithstanding the fact that her son has grown to manhood, and is no longer dependent upon her, that she has a husband able and willing to support her, and that she is an only child and prospective heir of a considerable estate. It can not be doubted that, if application had been made by the appellee for a termination of this alimony at the date of the marriage of appellant, under the showing we have here, the chancellor would have sustained his motion.

The Supreme Court of Illinois, in the case of Stillman v. Stillman, after stating that the question was not settled by statute, said:

"Reasoning from analogy, it would seem that when for any cause the alimony decreed becomes

unnecessary for the support of the wife, or when circum-
stances transpire that make it inequitable that she should
have further allowance, it would be reasonable and proper
for the court to absolve the husband from the burden im-
posed by the decree, and that it would be difficult to
suggest or conceive any cause that would present grounds
more reasonable and proper for suspending further pay-
ment of alimony than the subsequent marriage of the di-
vorced wife."

In our opinion, the chancellor did not err in
refusing to enforce payment of the alimony which accrued
subsequently to the marriage of appellant.

As to the second contention, that the chancellor erred
in refusing to subject the two cottages on Madison street
and the lot owned by testator on the east side of Pope
street to the payment of her judgment, upon the theory
that he had made no disposition of this property, it seems
to us that appellant is equally at fault.

In construing a will, testator's intention must, if pos-
sible, be ascertained from the whole will, and, where this
is plain, the court will endeavor to carry out that intention,
and, in doing so, will, if necessary, disregard particular ex-
pressions, supply defective descriptions of property, and
broaden restrictive provisions. (See Guthrie v. Turner, 14
Ky. Law Rep., 336; Peynado's Devisees v. Peynado's Ex'r,
82 Ky., 5.)

If it be held, as contended, that the lot on the north-
east corner of Pope street and Frankfort avenue did not
pass under the will, then no effect whatever is given to
the language, " on both sides of Pope street," which would
include the lot on the east side as well. As to the two
cottages on Madison street, whilst they were acquired sub-
sequently to the making of the will, it appears that testator

held a mortgage on this property which was enforced by judicial sale after the will was executed, and he became the purchaser thereof for the amount of his debt.

Section 4839 of the Kentucky Statutes provides that "a will shall be construed with reference to the real and personal estate comprised in it to take effect as if it had been executed immediately before the death of testator unless a contrary intention shall appear by the will."

It would appear from the peculiar phraseology employed in this clause of the will that testator intended to dispose of all the personal property owned by him at the date of its execution as well as all which he might die possessed of.    The expression used—"that I have"—is in the present tense, and seems to refer to the personal property then owned by testator, which would include the mortgage debt secured by lien on the Madison street property, which he subsequently purchased in satisfaction thereof.    But it seems to us that this question can not be properly determined in this proceeding, as both of these lots are in the possession and are claimed to be the property of Mrs. Clara Franck, the wife of appellee, who is not a party to this action.

For reasons indicated, the judgment is affirmed.