ROBERT A. WARREN

*v.*

THOMAS WARREN.

[Submitted January 3d, 1921. Decided January 27th, 1921.]

1. A money decree of this court has by statute the force and effect of a judgment at law, and a decree for alimony fastens as a lien on the lands of the husband as it accrues, and such lien attaches to the husband's share of the proceeds of such land sold in a partition suit and paid into court.

2. A wife seeking to enforce her lien for alimony under a divorce decree of this court, is not barred by laches where the husband absconded and for twenty years concealed himself from his wife, and when she discovered him he begged for more time, which was granted, and when any effort by the wife to recover of him before he came into his inheritance would have been futile.

3. The second marriage of a divorced wife does not *ipso facto* terminate her alimony.

4. Where $5 a week was granted to a wife in a divorce decree for support of a wife and daughter, the subsequent marriage of the daughter did not automatically modify the decree.

On petition, &c.

*Messrs. Homan & Buchanan,* for the petitioner.

*Mr. Charles E. S. Simpson,* for the respondent.

BACKES, V. C.

The lands involved in the above-entitled partition suit were sold and the complainant's distributive share of the proceeds was paid into court.

The petitioner, Almira M. Loudenslager, formerly the wife of the complainant, applies to be made a party to the suit, and prays that she be paid the amount due her from the complainant for alimony awarded by this court by the decree divorcing the couple.

The divorce was granted June 11th, 1895, with an allowance of $5 a week for the support of the wife and the infant child of the marriage. No part has been paid. Upon the institution of the divorce suit the complainant fled the state and his whereabouts were unknown to the wife until the year 1915, when she sought and found him in New York. In the interview, at that time, he induced her not to prosecute her claim for payment of the arrears of alimony by the sale of his interest in his father's estate, which he had then recently inherited (the lands in the partition suit), by a promise that upon the settlement of the estate he would give his daughter $10,000. He admits the promise but with the explanation that the gift was to be testamentary.

The petitioner remarried October 23d, 1901; the child, a daughter, married January 31st, 1912. The complainant resists the payment of the arrears of alimony out of the funds in court, on the ground that the petitioner is in laches in enforcing her claim, and if this be not a bar, that it should not be allowed

beyond the petitioner's second marriage, and, at most, not beyond the daughter's marriage.

The decree for alimony, as the alimony accrued from time to time, fastened as a lien upon the lands of the complainant when he came into his inheritance, by virtue of section 44 of the Chancery act (*Comp. Stat. p. 425*), which gives to decrees of this court the force, operation and effect of a judgment at law in the supreme court, and now attaches to the proceeds paid into court. An abstract of the decree was filed in the supreme court clerk's office to preserve the priority of the lien over subsequently acquired interests. In *Vreeland* v. *Jacobus, 19 N. J. Eq. 231,* Chancellor Zabriskie said that a divorce decree "is a judgment, so far as the counsel fee and costs are concerned, but is not a judgment so as to bind lands so far as the *annuity* is concerned"—that is to say, it does not bind lands presently for prospective alimony. In that case the surplus money in a foreclosure suit had been paid into court and the wife sought, as against a subsequent judgment creditor, to sequester and have the surplus invested and applied in payment of the alimony as it would thereafter accrue. In *Close* v. *Close, 28 N. J. Eq. 472,* the question was one of priority as between an execution on an alimony decree and an execution on a junior judgment at law which had been delivered first to the sheriff. The court held that as between the rival executions the one first delivered to the sheriff had precedence, and any provision in the divorce decree declaring the alimony a lien upon land to be ineffective. That is, if a lien at all, it is by force of the statute and not by virtue of the decree declaring it to be a lien. In the course of his remarks, Mr. Justice Dixon, who spoke for the court of errors and appeals, said of the statute: "This statute was not intended to embrace all decrees and to charge all the lands of all defendants with their performance, but applied only to such decrees as resembled judgments at law in the pecuniary obligations they imposed and made them equivalent to such judgments in their effect." Alimony decrees do not, of course, resemble judgments at law, in the pecuniary obligations they impose, at the time of their pronouncement, but they take on that form as the alimony from time to time accrues, and attach to the land by virtue of the

statute. It was so regarded by the court of errors and appeals in the later case of *Stoy* v. *Stoy, 41 N. J. Eq. 370.* That was a foreclosure suit in which the alimony decree was set up as a subsequent lien to the mortgage under foreclosure. Vice-Chancellor Bird overruled exceptions to a master's report allowing alimony that had accrued subsequent to the docketing of the decree in the supreme court and up to the date of the master's report. Just how the docketing of the decree was of any importance does not appear. In passing upon the question the learned vice-chancellor said: "Now, the decree of the court is that the defendant, or other party against whom it is made [in suits for divorce it may be against complainants], shall pay a certain sum per week, each and every week, which is just as definite or absolue as the accruing of interest, and I cannot imagine any reason why it should not become a lien as it accrues as does interest. I shall so advise." The judgment was unanimously affirmed.

The objection that the petitioner is in laches is without merit in fact. The complainant absconded and for twenty years concealed himself from his wife, and when at last she came upon him he begged for more time and it was granted. Besides, any effort by the petitioner to recover of the complainant before he came into his present inheritance would have been absolutely futile. The complainant does not stand in a favorable position to raise the question of laches, and there is nothing in the petitioner's conduct, by way of delinquency, to invoke the bar.

The practice of the English ecclesiastical courts not to ordinarily enforce arrears of alimony extending beyond a year, as observed by Mr. Justice Pitney, in *Lynde* v. *Lynde, 64 N. J. Eq. 736, 753,* is not applicable in cases where the arrears are due to the willful defiance of the decree by the husband. In *DeBlaquiere* v. *DeBlaquiere, 3 Hagg. Ec. 322,* cited in the *Lynde Case,* the husband petitioned to reduce the alimony and the wife countered to enforce arrears. The arrears arose from reduced payments on the installments. The court refused to interfere because of inconvenience, and the acquiescence on the part of the wife in the diminution of the alimony, from which Dr. Lushington said it was clear that she never intended to call for the arrears. And in *Wilson* v. *Wilson,* cited in the footnote to the

*DeBlaquiere Case,* the court refused to enforce for more than one year, holding that "if the wife is aggrieved she should make her application within a reasonable time, otherwise the court will infer she has made some more beneficial arrangement"—acquiescence. But it is clearly inferable from these authorities that if the default is due to the short comings of the husband, in which the wife has no share, the court will not hesitate to compel a compliance with the terms of the decree. In other words, relief will be granted if the wife shows sufficient cause for the delay in appealing to the court.

The second marriage of a divorced wife does not *ipso facto* terminate the alimony. *2 Bish. M., D. & S. 418; Gordon* v. *Baker, 192 Ill. App. 587; Casteel* v. *Casteel, 38 Ark. 477; Montgomery* v. *Offult, 133 Ky. 157; Linton* v. *Hall, 149 N. Y. Supp. 385; Cohen* v. *Cohen, 150 Cal. 99.* Nor did the marriage of the daughter automatically modify the decree. The award was to the wife, not to the wife and daughter. The duty to support the daughter was not thereby shifted to the mother; the necessity of it was imposed upon her by the waywardness of the father, and the award was simply to ease her burden. The release from that burden, by the daughter's marriage, did not remit, *pro tanto,* the wife's alimony, and the relief therefrom accrued to her advantage, not to that of the refractory husband.

I am referred by complainant's counsel to *Franck* v. *Franck, 107 Ky. 362,* as a case "on all fours" with the one at bar, and an authority for his contention that the petitioner should not be allowed alimony after her remarriage. The wife there obtained a decree in 1879; she remarried ten years later. In 1896 she applied to the chancellor, who determined the amount due at that time, but refused to enforce the decree beyond the second marriage. The facts in that case show that the husband was at all times accessible. The chancellor refrained from following the practice of the ecclesiastical courts of England, allowing one year's arrears only, but refused to go beyond the date of the second marriage because of the wife's delay, and the appellate court rested its affirming judgment, in a measure, upon the theory that had the husband applied to the chancellor, at the time of his wife's second marriage, to terminate the alimony, the

chancellor would have sustained his motion—a theory that seems to me to be wholly inadmissible where the husband is contumacious.

The effort to check the running or to modify the divorce decree is misdirected in these proceedings. I must enforce that decree, as a lien, as it is here presented. Both cases are in this court, it is true, but I must, nevertheless, treat them as though they were in different tribunals. If a motion for relief from the force of the alimony decree were pending in the divorce suit, and an application to suspend judgment in the present proceeding were made, I would, of course, await the determination of that litigation. But it seems to me the complainant would be in no better position on such a motion than he is here.

Upon an application to modify, in the divorce suit, the complainant would receive scant consideration until he purged himself of the contempt. *Rigney* v. *Rigney, 62 N. J. Eq. 8.* Had he obediently complied with the alimony decree, and then, upon his wife's second marriage, applied for a modification, it would have been disposed of on its merits as to amount; or, if then, had he shown an honest desire and inability to comply with the alimony decree, his plea would have been received with at least some degree of sympathy. But, as he has spurned the decree and defied the power and authority of the court throughout, his supplications would fall on deaf ears and relief would be withheld.

The enforcement of the arrears to date is but equitable under the circumstances. The complainant's conduct towards his wife, during their cohabitation of a few years, was despicable and shocking, as the testimony in the divorce suit here offered in evidence shows. The alimony, a mere pittance, was fixed at $5 a week because Warren was a vagabond. Even this dry-bread allowance he denied his wife and infant, who were utterly destitute, and whom he shamefully abandoned. When the petitioner was able she went to work to support herself and the baby, and struggled for years until she married the man whose name she now bears. The complainant stayed out of ready reach of process to enforce the alimony, and the only respect he has shown for

the decree is the effort to avoid its execution in the partition suit. In rearing the child to womanhood, her education, and fitting her out for marriage the petitioner spent over $5,000, all of which the father, the complainant, would have borne had he been mindful of his obligations, not to mention proper support of his wife. And when it is taken into consideration that the petitioner is deprived of dower in the lands in question, by reason of the decree of divorce, it can be readily calculated that she is out of pocket, though she get all of the arrears. If the enforcement of the decree for arrears rests in sound discretion, as some of the authorities seem to hold, then justice requires, in view of all of the circumstances, that the discretion be exercised in favor of the petitioner. I will so advise.