The above petitioner, in 1918, secured a final decree of divorce from the bonds of matrimony for the cause of adultery, and in the decree was allowed permanent alimony at the rate of $10 each week. Subsequently, the petitioner married a man named Hill, and thereupon the defendant, her former husband, filed a petition in this cause praying that he be relieved of any further payment under the aforesaid decree. It appears that the woman opened an establishment for the dressing of hair and other activities, commonly called a beauty parlor, in 1918, but, almost immediately, was obliged to abandon the venture because of misfortunes that fell upon her. She was also the owner of a parcel of real property which she sold in November, 1923, and secured as her equity therein the sum of nearly $10,000. Her present *Page 712 
husband, she says, is employed at wages of $55 a week, out of which he contributes to her support, and that her present father-in-law pays her $55 a month for board and lodging. She says that she has been obliged to live upon the proceeds of the sale of her real property, so that that sum has shrunken from its original amount to the sum of $10.
Her affidavit is filled with vague hearsay statements and suppositions, such as information that the defendant has sold an apartment-house for $35,000, but she neither discloses the source of her information nor does anyone else substantiate what she says. Neither is she able to give any enlightenment as to what encumbrances or liens were upon the property, making it impossible to calculate the equity realized upon the sale. Her statements are denied by the man.
There is thus presented for the first time in this state, so far as I know, the question of the effect of a woman's remarriage upon her right to alimony from her former husband. It is true that Vice-Chancellor Grey said, in Abele v. Abele, 62 N.J. Eq. 644,
that because the successful wife was quite young enough to expect to be married again he would not allow permanent alimony. I do not conceive, however, for obvious reasons, that this was any adjudication on the subject now being considered. Warren v.Warren, 92 N.J. Eq. 334, is authority to the effect that such a motion as the one under consideration will not be allowed where the man is in contempt for failure to obey the alimony order. Vice-Chancellor Backes says: "The second marriage * * * does not,ipso facto, terminate the alimony." This is far from meaning that it never will have that effect. This question has been passed upon by the courts of a number of our sister states and those of England. In some of the jurisdictions, such as New York, in the case of Shepherd v. Shepherd, 1 Hun 240; affirmed in58 N.Y. 644, and in Indiana in the case of Miller v. Clark,23 Ind. 370, the subsequent marriage has been declared to have no effect upon the previous allowance, although the New York rule has been considerably weakened by the later opinion in Kiralfy
v. Kiralfy, 73 N. *Page 713 Y. Supp. 708, where the earlier opinion is examined and distinguished, almost to the vanishing point. On the other hand, the authorities in Massachusetts, from Albee v. Wyman, 10 Gray222, to the present time, are to the effect that the remarriage throws upon the former wife the burden of establishing primafacie proof that the support afforded by her second husband is inadequate. This was expressly held in Southworth v.Treadwell, 168 Mass. 511, and was followed by the supreme court of California in Cohen v. Cohen, 150 Cal. 99, where the court says, "we think this rule is just and equitable."
The English rule is of no assistance because of the practice growing out of their Divorce act of 1857, which provides for inserting the dum sola et casta vixerit clause, which is never, so far as I know, used in our decrees. Bid. N.J. Div. Pr. (2ded.) 155.
The fundamental reason for permanent alimony has been most clearly stated by Sir J.P. Wilde, in Sidney v. Sidney, 4 Swab. T. 178, where he says:
"The needs of the wife and the wrong of the husband are the same in both cases. In both cases the husband has, of his own wrong and wickedness, thrust forth his wife from the position of participator in his station and means. Obliged in both cases to withdraw from his home, she is, without any fault of her own, deprived of her fair and reasonable share of such necessaries and comforts as lay at his command. Why should not the husband's purse be called upon to meet both cases alike? It has been said that in one case she remains a wife, and in the other she does not. This remark would carry great weight if the provision were intended to continue in the event of her second marriage, but it can hardly affect the rate of allowance made and continued so long only as the wife remains chaste and unmarried. * * * A very large number of the divorce cases since the act have been petitions by the wife for cruelty and adultery, or desertion and adultery. And among certain classes of the community a very common case indeed is that of a young husband *Page 714 
who, either not agreeing with his wife or getting tired of her shortly after marriage, endeavors to shake her off. In this endeavor he generally begins by treating her with neglect and contempt, often half starves her, often beats her, often insults her by open adultery, and ends by deserting her and cohabiting with another woman. That the wife should desire a divorce in such a case can hardly be a matter of surprise, and that she should obtain it is but bare justice. But it is the very thing that the husband wants, too. He has succeeded in shaking off the obligations of marriage, and that by his own voluntary breach of them. And if he can part with his wife at the door of the divorce court without any obligation to support her, and with full liberty to form a new connection, his triumph over the sacred permanence of marriage will have been complete * * *. No man should, in my judgment, be permitted to rid himself of his wife by ill-treatment, and at the same time escape the obligation of supporting her."
After such an allowance has been made in a final decree, it may be modified upon the application of either party. Barrett v.Barrett, 41 N.J. Eq. 139. Hence, it is only necessary to determine what effect, if any, a remarriage of a woman ought to have upon the precedent decree for alimony under the circumstances of this case.
When the ordinary run of men and women intermarry, the wife, in her way and by her efforts, contributes in no small degree to the acquisition of such property as the husband is able to accumulate. Without her services and economies his expenses and expenditures would probably exceed the necessary disbursements in the home. Because of her limitations and her necessary activities in his behalf, she is not trained or equipped for success in the field of commerce or any of the other ordinary means by which a man obtains a livelihood. Now, when he, by his misconduct, forces her to withdraw from cohabitation, and she establishes her wrongs in a decree of divorce, it is only just, as Sir J.P. Wilde says, that her necessities should be met by the resources *Page 715 
she has assisted her husband in acquiring, as well as his earning powers. This is not in the nature of a penalty imposed upon him for his misconduct, but it is based upon the necessities of the wife and intended to compel him to respond to his duty to support her in his station in life. Boyce v. Boyce, 27 N.J. Eq. 433.
Upon consideration of these principles it would seem clear that the fair and just rule to be deduced is, that the remarriage of the wife who has divorced her husband ought to raise a presumption that the necessity for alimony no longer exists, but it is subject to be rebutted upon a showing that her second husband will be unable to support her in anything like the station in life of the man whom she has divorced, in which event the alimony should either be continued without change, or modified according to the circumstances of each individual case.
It is reasonable to suppose, in the absence of proof to the contrary, that a woman who has been supported by her previous husband will choose from her associates a second mate substantially as well able to support her as the man from whom she has been freed. Neither is at a violent assumption to credit her second husband with being a man who is competent to discharge the material elements of his obligation to his wife. Under these circumstances there would be no further need of the support from the first husband, and as the whole subject of alimony is based upon the theory of the necessities of the wife, the reason for alimenting her would appear to have come to an end. Common experience seems to substantiate the accuracy of these observations, because in the history of our state it appears there has never been occasion for a husband to seek the aid of this court to protect him from the rapacity of a former wife, although there must have been hundreds or thousands of instances of women entitled to alimony who have remarried. To the vast majority of women there would be a natural repulsion against accepting the bounty of any man whose conduct had driven his wife to seek and obtain a decree severing the bond of matrimony one moment beyond the necessity of her case, *Page 716 
and the natural supposition is that she has found the support provided by her second husband to be ample for her comfort.
If, however, a woman's heart should be won by a second spouse whose ability to support her should be inadequate, for any reason, it would appear to be the wise course to compel the man from whom she has been divorced to continue to discharge the obligation he had assumed when he married her. Any other policy might result in an obstacle to marriage, upon which the law has always looked with abhorrence. The woman having been given by law the right to marry again should not be penalized by an exercise of that right, in view of the favorable regard of our institutions toward marriage.
Applying the above observations to the facts of this case, we find that this respondent and her husband are in receipt of an annual income of about $3,200. While she vaguely alleges in her affidavits that she has been "accustomed to having more clothing, pleasures and entertainment, and living in better style" while married to her first husband, there is not a single fact alleged in support of this declaration, and when it is contrasted with the striking fact that she was only allowed the very small sum of $520 a year alimony after she had proved her husband's guilt and her right to her freedom, it would seem fair to assume that he was not a man of any great substance during the time of their married life. He has been remarried, as he had a right to do, and is rearing a family as the result thereof. While his first duty, in the eyes of the law, is to support his first wife so long as that may be necessary, his added burdens and the rights of innocent third parties may properly be taken into account when such necessity has been terminated. Nichols v. Nichols,25 N.J. Eq. 60.
The order for alimony should be suspended. *Page 717