ROSE J. HERMAN, petitioner,

*v.*

SOLOMON HERMAN, defendant.

[Decided March 8th, 1939.]

*Mr. Abe J. David,* for the petitioner.

HERR, A. M.

Petitioner secured her final decree for divorce from the bond of matrimony in this suit on September 16th, 1929. No order for alimony was made pending the suit or subsequent to the decree. Application for alimony was not made until the year 1931, and it was then referred to a special

master to take proofs and report to the court whether in his judgment alimony should be ordered and if so in what sum. The master heard evidence and reported on May 15th, 1931, that in his opinion the defendant should be ordered to pay alimony in the sum of $15 per week. No exceptions were filed to this report, nor was any order entered thereon. No further proceedings were taken by either party in the cause until the present application.

Defendant has been paying moneys to petitioner from time to time since the entry of the decree, for her support and maintenance, but these payments have fallen far short of the allowance recommended by the master. It is petitioner's admitted purpose in pressing her present application to establish the arrearages as a debt against defendant, upon which she may take out process of execution.

There is no doubt as to the power of the chancellor to make an order or decree *nunc pro tunc* even after a great interval of time has elapsed. *Ruckman* v. *Decker, 27 N. J. Eq. 244; Hoyt* v. *Hoyt, 98 N. J. Eq. 426; 131 Atl. Rep. 127.* But the power will not be exercised when to do so would disturb a status or impair a right, particularly where as in the instant case the delay has been due to the neglect of the petitioner. *Rinehart* v. *Rinehart, 91 N. J. Eq. 354, 356; 110 Atl. Rep. 29.* On the contrary, the only legitimate purpose and justification for entering an order or decree *nunc pro tunc* is to preclude the intervention of subsequent rights and equities from disturbing a status or impairing a right. *In re Beam, 93 N. J. Eq. 593, 597; 117 Atl. Rep. 613.*

To grant petitioner's application would clearly violate this condition. Although defendant's common law obligation to support petitioner still persists, it has remained unliquidated as to amount. Until the court orders periodic payments in the form of alimony no debt can arise in petitioner's favor. To order payment of alimony *nunc pro tunc* would be to create a debt retroactively, which if not inconsistent with due process of law would at least be contrary to settled principles. Defendant's status remains one of immunity from the obligation to pay a fixed allowance for petitioner's support until the court orders it.

Alimony is always subject to readjustment upon a substantial change in the circumstances of the parties. In this case, had an order for the payment of alimony been entered promptly upon the filing of the master's report, a subsequent change of circumstances (which concededly has occurred) would presumably have led to a reduction in the amount of alimony as originally fixed, on defendant's motion. To enter an order *nunc pro tunc* for the allowance recommended by the master would be to foreclose the defendant *ex post facto* of his right to have applied for such modification.

Petitioner's application is predicated upon a misconception of the nature of alimony. Alimony is the periodic allowance from the husband's income payable to the wife (or to the ex-wife who has divorced him) for her maintenance, as fixed from time to time by the court according to the varying circumstances of the parties. The allowance will not ordinarily be ordered out of the husband's estate, nor retrospectively. Even where arrearages have accumulated under a subsisting alimony order the court is loath to enforce collection beyond one year. *De Blaquiere* v. *De Blaquiere, 3 Hagg. Ecc. 322; 162 Eng. Repr. 1173.* Such arrearages have the force of a judgment at law only when the chancellor certifies the amount thereof. *Rooney* v. *Rooney, 102 N. J. Law 551; 133 Atl. Rep. 752.* If the wife unduly delays or neglects to apply for alimony or to seek collection of arrearages under an existing alimony order the court will be inclined to find in her delay a waiver or evidence of payment. See *Wilson* v. *Wilson, 14 N. J. Mis. R. 33; 181 Atl. Rep. 257.* Alimony is ordered to the end that the wife may *presently* be maintained. If she continues to maintain herself for months or years without such provision her past needs will not be considered; it is sufficient that she has subsisted in the meantime. To inquire into the varying past circumstances of the parties in order to determine what the amount of alimony should have been from time to time, and to hold the husband in default for not having paid what the court may adjudge that he ought to have paid, would be to create a debt against the husband's estate rather than a charge against his income.

Moreover, the making of an order is itself only a ministerial act, and must be based upon a previous adjudication by the court of the subject-matter embraced within its operation. In this case there never has been an adjudication by the court respecting alimony. The master's report was a recommendation only, not an adjudication by the court. *2 Dan. Ch. P. & P. (6th Am. Ed.) 1289; Holmes* v. *Holmes, 18 N. J. Eq. 141; MacDonnell* v. *Vitille, 111 N. J. Eq. 502, 508; 162 Atl. Rep. 738.* Because the circumstances of the parties have changed substantially since the master's report was filed, it is obvious that no adjudication should now be made upon the basis of the proofs taken before him.

For the reason that the proceeding for alimony in this case has never been brought to an adjudication, but has been permitted to lie dormant for almost eight years, it will be considered as having been abandoned. If an order for alimony is to be made it must be based upon a new petition and fresh proofs, and will not be permitted retroactive effect.