## SAGE *v.* SAGE.

4-9664                                     245 S. W. 2d 398

Opinion delivered January 21, 1952.

Rehearing denied February 18, 1952.

*Love & Love,* for appellant.

*Stein & Stein,* for appellee.

WARD, J. This is an appeal from a decree of the lower court which modified a former decree in that it took the custody of two minor children from appellant and gave it to appellee, and also relieved appellee of the obligation of paying $450 accumulated support money. In order to understand the issues, the rulings of the court, and appellant's objections, it is necessary to review briefly the proceedings leading up to the decree appealed from.

On March 11, 1950, appellant procured a decree of divorce which gave to her the custody of the two children, ages three and four, and required appellee to pay for their support $45 per month, allowing him the right to visit the children at ''reasonable and seasonable times''. At this time the parties resided near El Dorado. About five weeks later the father, appellee, filed a motion alleging he was not being allowed visiting privileges and asked to have custody changed or his visiting privileges enforced. Before this motion was heard he filed a motion to set aside the decree of March 11th as it related to custody. The matter was continued to the next term of court. On July 3, 1950, there was another continuance to September 6th, when a demurrer to the motion to set aside the former decree was sustained. On September 12, 1950, appellee filed another motion for custody in which he alleged; a change in conditions in that both

parties had married; that he had a good home for the children and his present wife wanted them; that appellant had taken the children from this state and the jurisdiction of the court, and was living with them in Virginia; and that the step-father was profane and an alcoholic, and the children were not being properly cared for. The hearing was set for November 20, 1950, but continued to March 27, 1951, when it was reset for June 18th. On the latter date it was set for July 9th when the decree appealed from was rendered. Previously appellant had filed a motion for judgment against appellee for $450 for accumulated unpaid monthly allowances for the children.

At the beginning of the hearing appellant made an oral motion, in open court, for a continuance and in support filed two letters from Dr. Aubrey L. Shelton of Virginia who lived in the same town where appellant resided. The first letter was dated June 6, 1951, and stated that appellant had given birth to a child by normal obstetric delivery on May 2, 1951, and, in his opinion, would be unable to travel to Arkansas before August 1st. The second letter, dated July 7th, was to the same effect except it extended the date she could make the trip to no sooner than November 2nd.

The court overruled the motion for a continuance and proceeded to hear the testimony of appellee and his present wife, who were the only witnesses. Their testimony was substantially the allegations mentioned above. The court rendered a decree for appellee, giving him custody of the two children, relieving him from making any future payments for the children, and also absolving him from the obligation of paying the accumulated payments which amounted to $450. Timely objections were made to all the above rulings and findings of the court.

For a reversal, it is urged the lower court committed three errors, to-wit: One, not allowing a continuance; two, awarding custody of the children to appellee, and, three, relieving appellee of paying the $450.

## 1.

The matter of a continuance lies within the sound discretion of the court. *McMorella* v. *Greer*, 211 Ark. 417, 200 S. W. 2d 974; *Morgan* v. *Austin*, 206 Ark. 235, 174 S. W. 2d 562. We think the court did not abuse its discretion. The doctor was not consistent. At first he thought appellant would be able to make the trip to Arkansas by August 1st, but less than three weeks later he changed the date to November 2nd. His reason in both instances was that appellant had given birth to a child on May 2nd. This alone justified the chancellor in using his discretion and using his own common sense and knowledge. He also had a right to consider the fact that no other diligence was shown, no effort to take appellant's deposition, no showing that her presence was needed other than to testify, and that the case had been continued several times. It was shown that her attorney had given her ample and imperitive notice. Numerous continuances are not generally looked upon with favor, as stated in Vol. 17 C. J. S. at page 277, § 112. The case of *Ashworth* v. *Brickey,* 129 Ark. 295, 195 S. W. 682, relied on by appellant can be distinguished. In that case there was a written motion in compliance with the statute which set forth in some detail the physical condition of the witness, and it further stated that the witness was needed not only to testify but to advise with counsel about matters within his knowledge. The matter of a continuance is always governed by the facts and circumstances of the particular case in which it arises and rarely can we say that any case is controlled by another.

## 2.

Did the court err in giving custody of the children to appellee? It is well established by numerous decisions of our court that before a change in custody is justified the moving party must show a change in conditions [since the initial award] and it must appear to be for the best interest of the children. These two prerequisites do not stand out [as having been shown by the testimony] in this case as they usually do in other cases where the same result was reached, but this is not the usual case and

should be considered in the light of disclosed facts and circumstances. When so considered it shows, we think, justification for the court's action. The record discloses that the chancellor [in a statement preliminary to entering a decree] recognized he faced a perplexing problem, that there was no set rule to follow, but that the prime consideration was the welfare of the children. He further stated that if and when appellant, with the children, returned to the jurisdiction of the court her request for restoration of the children would be heard. By removing the children from the state without permission appellant not only deprived the father of his natural and legal rights of visitation, but she thereby removed them from the jurisdiction of the court and its protecting power. The chancellor knew [from the evidence] they would be given a good home and proper care if entrusted to their father and that they would then be under his jurisdiction and supervision. It was not possible, however, for him to know [because no such evidence was introduced] that the children were being properly cared for in Virginia. The chancellor recognized the difficulties facing the father in any attempt to visit with or guard the welfare of his children in Virginia, or to remove them therefrom, and we agree with his decision that their welfare would best be served by returning them [at least pending further orders] to their father.

3.

The court was in error in relieving appellee of the obligation to pay the past due monthly installments amounting to $450. Neither side was able to find any decision of our court denying or affirming the above conclusion and our own search has disclosed none, but the greater weight of other decisions and text writers affirms it. In our opinion the rule that courts have no power to remit accumulated payments under the circumstances here is a sound one and we adopt that view. Many states adopting this rule are noted in 94 A. L. R. at page 332. In Vol. 27 C. J. S. at page 1239 appears the following:

"Payments exacted by the original decree of divorce become vested in the payee as they accrue, and the court, on application to modify such decree, is without authority to reduce the amounts or modify the decree with reference thereto retrospectively, unless some reservation is made in the decree itself; the modifying decree relates to the future only and from the time of its entry."

There are a few states which hold that accrued installments may be remitted or modified. One such state is Minnesota from which appellee cites *Eberhart* v. *Eberhart*, 153 Minn. 66, 189 N. W. 592. In this case, however, we understand the holding to be that payment of accrued installments was only suspended until the child was returned to the jurisdiction of the court. We agree with this conclusion as we understand it. The case of *Weinbaum* v. *Weinbaum*, 153 A. 303 (R. I.) is also cited, but this case only holds that the person failing to pay accrued installments [under certain circumstances] would not be punished for contempt. We likewise agree with this conclusion and so stated in *Bachus* v. *Bachus*, 216 Ark. 802, 227 S. W. 2d 439.

The decree of the lower court is affirmed as to items One and Two, mentioned above, and reversed as to item Three.

The Chief Justice, Mr. Justice GEORGE ROSE SMITH and Mr. Justice ROBINSON would not have changed the original order of custody.