Pence *v.* Pence.

5-402                                        268 S. W. 2d 609

Opinion delivered June 7, 1954.

*Wayne Foster,* for appellant.

*Edward H. Boyett* and *Terral & Rawlings,* for appellee.

ED. F. McFADDIN, Justice. This is a proceeding to obtain judgment for child support payments alleged to be past due and unpaid. The Chancery Court refused judgment, and this appeal ensued.

On February 5, 1942, the Pulaski Chancery Court awarded Mrs. Winnie Pence (the present appellant) a divorce from her then husband, Royce Pence (the present appellee). In the divorce decree, Mrs. Pence was awarded the custody of their infant child, Charles Royce Pence, and was awarded the sum of $2.50 per week for the maintenance of the said minor child. The decree gave Mrs. Pence the custody of the child, and made no provision for the father's right of visitation, because such visitation rights seem to have been mutually agreed upon outside of the decree. The child visited Mr. Pence over the week-ends until Mr. Pence entered the naval service on March 3, 1942. The maintenance payments had been regularly made to that time.

Mr. Pence was in the United States Navy, and he made an allotment of $15.00 per month for the benefit of his son, Charles Royce Pence, and this allotment was regularly paid by the Navy until May, 1945. Even though these monthly allotments were in excess of the amount ordered by the Court, nevertheless, Mr. Pence claims no credit for such monthly overpayments. *Loomis* v. *Loomis,* 221 Ark. 743, 255 S. W. 2d 671.

In May, 1945, Mr. Pence stopped the allotment, and made no further monthly payments; and on September 18, 1953, Mrs. Pence filed motion in the original proceedings in the Pulaski Chancery Court for $1,285.00 as the accumulated monthly payments at $2.50 per week. Mr. Pence resisted the motion for judgment; and the evidence disclosed that Mr. Pence and his family had been unable to locate the whereabouts of Mrs. Pence and the boy, Charles Royce Pence, from 1944 until the filing of

this motion in September, 1953. The evidence showed that shortly after the divorce in 1942, Mrs. Pence married a Mr. Weaver, and divorced him in a few weeks; and then married her present husband, Mr. Nelson. We will continue to refer to her as Mrs. Pence.

In 1944, Mr. Pence was coming home from the Navy on a 30-day furlough, and he wrote his mother to ask Mrs. Pence to let him have the boy for a visit during the furlough. Mrs. Pence refused the request; and just before Mr. Pence reached Arkansas, Mrs. Pence wrote Mr. Pence's mother a postcard from some Western State, saying: "We are on our way to the coast. Don't know where we are going or when we will be back." Mr. Pence's mother sent telegrams trying to locate Mrs. Pence, and offered to send someone up to get the boy and to return him safely. Mrs. Pence had lived in Joplin, Missouri, but the Telegraph Company was unable to make any delivery. Mrs. Pence testified that after leaving Joplin, they lived for a time in Washington and Oregon, and then returned to Joplin, Missouri. It was not until 1950 that they finally returned to Arkansas to live. They have lived at Bauxite, Arkansas, since 1950.

The sum of $40.00 (from the Navy allotment money) remained in the registry of the Pulaski Chancery Court until June, 1947. When Mrs. Pence wrote for that money in 1947, a check was sent to her. She denies the receipt of this payment, but the cancelled check bears an endorsement strikingly similar to her admitted writing.

At the hearing in the Pulaski Chancery Court on October 29, 1953, the Court directed Mr. Pence to pay into the Registry of the Court $40.00 every two weeks thereafter for the future support of his son; and Mr. Pence raises no objection to that order. The Court refused to award Mrs. Pence judgment for the payments of $2.50 per week from 1945 to 1953, and she has appealed from such refusal. She claims that the case of *Sage* v. *Sage*, 219 Ark. 853, 245 S. W. 2d 398, is in point; that it requires that she have judgment for the unpaid and accumulated monthly payments. The issue in this case is

whether the law and the facts in *Sage* v. *Sage, supra,* require Mrs. Pence to receive judgment for all the payments due and unpaid from 1945 to 1953.

In *Sage* v. *Sage,* it was held that accrued installments, decreed as support money, become fixed with rendition of the judgment and the court is without power to remit them. The opinion contains a citation from 27 C. J. S. 1238, in which it was stated that payments exacted by the original decree become vested. This Court's opinion then said that in Minnesota it had been held that payment of accrued installments were only suspended "until the child" (for whose benefit the judgment was rendered) "was returned to the jurisdiction of the court." In using the word "suspended" there was not an intention to say that the payments were extinguished during the period covered by contumacious conduct. But there is a distinction between cancellation of the indebtedness by court action, and a course of conduct by the child's mother—conduct exemplified by circumstances showing that the amounts involved were supplied by the mother for her own convenience. Insofar as the child was concerned, it received payment. As to the mother, she waived the right to claim repayment for her own benefit.

We reach the conclusion that Mrs. Pence is entitled to judgment for payments of $2.50 per week from June 15, 1950, to October 29, 1953, which totals $425.00. But we conclude that she is not entitled to judgment for any unpaid amount prior to June 15, 1950, because from 1944 until June 15, 1950, she had the boy outside the jurisdiction of this Court, and thereby prevented visitation rights to Mr. Pence. We hold that the right of Mrs. Pence to enforce the payments was suspended until June, 1950, when she returned the child to this State. The rule is stated in *Sage* v. *Sage, supra:*

· "There are a few states which hold that accrued installments may be remitted or modified. One such state is Minnesota from which appellee cites *Eberhart* v. *Eberhart,* 153 Minn. 66, 189 N. W. 592. In this case, however, we understand the holding to be that payment of accrued installments was only suspended until the child was re-

turned to the jurisdiction of the court. We agree with this conclusion as we understand it."

In the cited case of *Eberhart* v. *Eberhart*, the Minnesota Court said:

"The plaintiff has taken the child from the jurisdiction of the court. So long as she keeps him without the jurisdiction, the defendant should be relieved from the payment of support money to accrue in the future and that already accrued should not be enforced against him."

In 1944 Mrs. Pence, without permission of the Pulaski Chancery Court, deliberately decided to take the boy to the Pacific Northwest. Evidently she determined that the financial returns to herself would outweigh the $2.50 per week she would receive from the order of the Pulaski Chancery Court. Mr. Pence and his family continued to look for the child, but were unable to find him. Now, after a lapse of years, Mrs. Pence wants all of the accumulated payments, without having allowed Mr. Pence —in the intervening years—to have the pleasure of seeing his child. Equity cannot aid her in such a situation. In *Antonacci* v. *Antonacci*, 222 Ark. 881, 263 S. W. 2d 484, in a somewhat similar situation, the Chancery Court refused to render judgment for $500.00 for unpaid installments of maintenance, because the mother had kept the child in California during the time that such payments accumulated. The situation in that case points the way to our holding here.

The Chief Justice and Justice MILLWEE agree with the views herein expressed; Justice ROBINSON expresses his views in a separate opinion, and believes that Mrs. Pence is not entitled to as much as this opinion gives her. Justices HOLT, GEORGE ROSE SMITH, and WARD, in their dissenting opinion, believe that Mrs. Pence is entitled to the full amount she claims. The effect of these various views results in the composite conclusion now made:

The decree of the Chancery Court is reversed and the cause is remanded, with directions to enter judgment in

favor of Mrs. Pence for $425.00 as the accumulated un-suspended and unpaid payments due up to October 29, 1953.

----

ROBINSON, J., concurring and dissenting. These parties were divorced in 1942. Pence paid support for the child in excess of the amount provided in the order of the court until 1945. $40 paid during this time remained in the registry of the court uncalled-for until 1947. Mrs. Pence made no effort whatever to contact Pence or to collect payment subsequent to May, 1945, until the motion was filed in September, 1953, a period of more than 8 years. She was married twice after her divorce from Pence. Pence married again and has a child by that marriage. He earns $400.00 per month and there is no showing that he has accumulated any savings. To require him to pay the entire sum in arrears, or a large portion thereof, would be wholly inequitable.

Of course Pence owes for the support of his child; and he would owe for such support without a court order. McCall v. McCall, 205 Ark. 1123, 172 S. W. 2d 677. Obviously the child was supported by someone, and Mrs. Pence furnished such support; but the question is, can she recoup for her expenditures over the eight year period, or is she barred by laches from recovering for a period greater than some reasonable period prior to the time she filed her motion to enforce payment? Although appellee does not plead laches by using that word in his response to appellant's motion, he did plead that appellant had waived her right to the collection of the amount in arrears, and he further pleaded the statute of limitation. The court made a finding that appellant had kept the child concealed from the father, and had waived her right to the aid of the court in reducing to judgment any payments which fell due during that period. Thus the court treated the complaint as alleging laches, and as heretofore stated there was a specific plea of waiver.

Laches is ''The established doctrine of equity that, apart from any question of statutory limitations, its courts will discourage delay and sloth in the enforcement of rights. Equity demands conscience, good faith, and reasonable diligence. In their absence the court will not act. The object of the doctrine of laches is to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes, there is danger of doing injustices, and there can be no longer a safe determination of the controversy.'' .Ballantine's Law Dictionary, 2nd Edition.

The doctrine of laches is a species of estoppel and rests upon the principle that if one remains silent when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent; and further, the equitable maxims that he who seeks equity must do equity, and that equity aids the vigilant, and that hence while there is a great variety of cases in which the equitable doctrine is invoked, each case must depend on its own particular circumstances and courts of equity discourage laches and delay without cause. *Stewart* v. *Pelt,* 198 Ark. 776, 131 S. W. 2d 644; *Neal* v. *Stuckey,* 202 Ark. 1119, 155 S. W. 2d 683; *Hardy* v. *Hilton,* 211 Ark. 991, 204 S. W. 2d 163; *Grimes* v. *Carroll,* 217 Ark. 210, 229 S. W. 2d 668.

''The right to enforce a judgment or decree for alimony may be lost by laches.'' 27 C.J.S. 1034.

In *Stone* v. *Stone,* 162 Mich. 319, 127 N. W. 258, the parties at the time of separation had one child, and the defendant was ordered to pay $5 per week for alimony, and a solicitor's fee of $25. Nothing was done to enforce the collection of this alimony for 13 years, and there the Supreme Court of Michigan said: ''Can she be heard at this late day, and under this state of facts, to object to the dismissal of her bill of complaint upon the ground of gross laches in failing to seasonably prosecute her suit to a final

decree? We are of the opinion that it would be inequitable and against sound public policy to permit her to do so. . . . Equity will not lend its aid to those who are not so diligent in protecting their own rights.''

In *Herman* v. *Herman,* 17 N. J. Misc. 127, 5 Atl. 2d 768, the New Jersey court said: ''If the wife unduly delays or neglects to apply for alimony or to seek collection of arrearages under an existing alimony order, the court will be inclined to find in her delay a waiver of evidence of payment. See *Wilson* v. *Wilson,* 181 Atl. 257.''

In *Franck* v. *Franck,* 107 Ky. 362, 54 S. W. 195, the Supreme Court of Kentucky said: ''Upon the question of enforcing the payment of alimony long in arrears, Mr. Bishop, in his work on Marriage and Divorce (§ 1098) says: 'As this allowance is for the wife's maintenance from year to year, the court will not ordinarily compel payment beyond a year prior to the application, unless some explanation of the delay is made or appears.' And the rule was very thoroughly established in the English ecclesiastical courts that, where both parties have long abstained from applying to the court, the one for a reduction of alimony, or the other to enforce the regular payment, it will not enforce payment of arrears beyond one year prior to the monition, without sufficient cause being shown for delay. See *De Blaquiere* v. *De Blaquiere,* 5 Eng. Ecc. R. 126. And in the case of *Wilson* v. *Wilson,* *supra,* upon an application by the wife to enforce a monition for the payment of alimony, the court said: 'Unless the husband is absent from the country, or some particular reasons are set forth, it would be productive of great inconvenience and injustice if, after the lapse of so many years, the court should enforce such monition. If the wife is aggrieved, she should make her application within a reasonable time; otherwise, the court will infer she has made some more beneficial arrangement. As a general rule, therefore, the court is not inclined to enforce arrears of many years' standing'.''

The order in the case at bar providing for payment of $2.50 per week was for the purpose of providing the

necessaries of life for the child of the parties. Subsequent to 1945 the appellant furnished those necessaries, but she could have compelled the appellee to do so if she had so desired; but now, in my opinion, she is barred on the principle of laches from recovering any amount accruing prior to a reasonable time beyond the time of making the application, which I believe should be one year. Therefore I would modify to that extent the decree of the Chancellor, and as modified, affirm.

Hence I concur in the majority opinion insofar as appellee is required to pay arrearages for a period of one year prior to the time appellant filed her motion to enforce such payment; and I dissent insofar as the majority opinion allows the collection of such arrearages for a period of more than year.

WARD, J., dissenting. The majority opinion leaves in hopeless confusion the law relative to the power of the courts to void accrued installments for child support. Regardless of the strained effort in the majority opinion to avoid doing so, the net result is to overrule the case of *Sage* v. *Sage,* 219 Ark. 853, 245 S. W. 2d 398, delivered January 21, 1952.

In the *Sage* case, supra, this court, discussing the power of the courts in this regard, said:

"In our opinion the rule that courts have no power to remit accumulated payments under the circumstances here is a sound one and we adopt that view."
Following the above we quoted with approval from Vol. 27 C. J. S. at page 1239 the following:

" 'Payments exacted by the original decree of divorce become vested in the payee as they accrue, and the court, on application to modify such decree, is without authority to reduce the amounts or modify the decree with reference thereto retrospectively, unless some reservation is made in the decree itself; the modifying decree relates to the future only and from the time of its entry.' "

If this court does not feel bound to follow a precedent so recent and so clearly stated as that laid down in the *Sage* case, supra, it has the power to do so, but, in such event we should be bold enough to so state, and not attempt to camouflage the result with strained deductions.

The strained deductions on the part of the majority, mentioned above, are apparent.

After the clear cut announcements in the *Sage* case, supra, copied above, we referred to the fact that a few states held to the contrary, and we commented on the case of *Eberhart* v. *Eberhart*, 153 Minn. 66, 189 N. W. 592. We stated that we agreed with the Minnesota case as we understood it to hold "that payment of accrued installments was *only suspended* until the child was returned to the jurisdiction of the court."

I submit there is no reason for the majority to conclude from the above reference to the Minnesota case that we thereby meant to abrogate the clearly expressed rule which we had just previously announced. The power of the court to *suspend payment* of accrued installments until a child is returned to the jurisdiction of the court cannot, by the common sense interpretation of plain english, mean that the court has power to forever cancel such payment. Moreover in the *Eberhart* case, supra, the court stated specifically that it was not passing on the power of the court to void or cancel accrued payments.

Justices Holt and George Rose Smith concur in this dissent.