CARNAHAN v. CARNAHAN.

5-2131                                    335 S. W. 2d 295

Opinion delivered May 16, 1960.

*William H. Drew,* for appellant.

*Thomas L. Cashion,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Francis N. Carnahan, was granted a divorce from appellant, Virginia Mae Carnahan, on December 17, 1956. Prior to the rendition of such decree, the parties entered into an agreement regarding care and custody of their minor child, Carolyn Sue Carnahan, born May 8, 1947, and also entered into a property settlement, the agreements being incorporated into the decree. The decree, *inter alia,* provided:

"That the said Francis Carnahan, on or before January 1, 1957, and on or before the first day of every Calendar month thereafter, pay to the said Virginia Carnahan the sum of $125.00 per month until the minor child of the parties hereto, Carolyn Sue Carnahan, reaches the age of 18. That out of said payments the said Virginia Carnahan is to provide for the care and maintenance of herself and minor child, Carolyn Sue Carnahan."

A few months subsequent to the divorce, appellant moved to Greenville, Mississippi, where she and Carolyn have resided since that time.

On September 8th, 1959, Mrs. Carnahan filed a motion with the court, asserting that Mr. Carnahan was delinquent in the monthly payments, and seeking judgment for the alleged arrearage. On the same date, Mr. Carnahan filed a motion, setting up that he "has for some time passed been acutely financially embarrassed, and is threatened with bankruptcy, and has been unable to make the payments ordered by the court"; that his income was insufficient to make the payments, and he prayed a reduction in "the support and maintenance and alimony to a sum that the plaintiff can pay, and the plaintiff believes that if given sufficient opportunity, he will be able to pay the arrears on an installment basis." Appellee further sought an amendment of the custody order to permit him to have custody of the minor child during the summer months. On October 13th, the date set for the hearing, appellee amended his motion, alleging further as a defense that appellant had taken the minor child to the State of Mississippi without the permission of the Chicot Chancery Court. Following a hearing on that date,[1] the court found that Mr. Carnahan was in default in payments totaling seven months, or a total amount of $875, but refused to enter judgment, finding as follows:

---

[1] Counsel for appellee requested that he be permitted to take a non-suit on his motion for reduction in support payments, and part-time custody, and the court permitted the motion to be withdrawn.

"The Court further finds that said child is now and has been since 1957, outside of the jurisdiction of this Court with her mother; that permission was never sought or granted by this Court for authority for the removal of said child outside of the jurisdiction of this Court; that a judgment for said $875.00 should be refused for the reason that said child is not now nor has she been within the jurisdiction of the Court during the period of delinquency as above found. The plaintiff-respondent should not be held in contempt for willful violation of the order of this Court incorporated in the decree of December 17, 1956, for the reason that the child has been removed from the jurisdiction of this Court without the Court's permission. It is further found that the defendant-petitioner should be granted authority and permission to remove said child from the jurisdiction of the Court upon the filing of a good and sufficient bond with the Clerk of this Court, conditioned that defendant-respondent will comply with all orders of this Court relating to the care, custody, support and general welfare of the child involved in this action, and a written appointment of the Clerk of this Court and/or her successor in office designating said Clerk and/or her successor as agent for service for all writs that may be issued in this action relating to the care, custody, support and general welfare of said child."

A decree was entered in accordance with the findings, and from the court's order refusing to render judgment for the back payments, appellant brings this appeal.

The Chancellor evidently relied on the case of *Pence v. Pence*, 223 Ark. 782, 268 S. W. 2d 609, in which case, this Court held that the right of the mother to claim support payments was suspended during a period when she kept the minor child outside the jurisdiction of the court, at a place unknown to the father; *i.e.*, such payments were remitted. This opinion somewhat modified the holding in *Sage* v. *Sage*, 219 Ark. 853, 245 S. W. 2d 398. In the *Sage* case, the mother had taken the children to Virginia, and the trial court relieved the father of the obligation to pay past due installments amounting to

$450. This Court reversed the trial court on that point holding that the court had no power to remit accumulative payments under the circumstances of the case. See also *Allison* v. *Binkley*, 222 Ark. 383, 259 S. W. 2d 511 (1953).

The case at bar is, we think, easily distinguishable from the *Pence* case. There, the mother refused the father the right to have the child visit him during the father's coming furlough from the Navy, sometime in 1944; just prior to the father's return to this state, Mrs. Pence, without permission of the Chancery Court, took the boy to the Pacific Northwest. Pence and his family made diligent effort to find the child, but were unable to do so. After living for a time in Washington and Oregon, Mrs. Pence and her subsequent husband returned to Joplin, Missouri, and in 1950, returned to Arkansas to live. During this entire period of time, Mr. Pence was without knowledge of the whereabouts of the child, and never had the opportunity to visit with him. Nor did Mrs. Pence endeavor to collect any payments from Mr. Pence during that period. This Court said: ''Now, after a lapse of years, Mrs. Pence wants all of the accumulative payments — without having allowed Mr. Pence — in all the intervening years — to have the pleasure of seeing his child. Equity cannot aid her in such a situation.'' Here, the situation is vastly different. Appellee has known at all times the whereabouts of the child; the evidence reflects that he has visited the child in Greenville, and it is further indicated (though this is not entirely clear from the transcript) that the child has visited him. The distance from appellee's home in Eudora to Greenville is approximately 35 miles, and certainly, this distance did not occasion undue hardship or inconvenience to appellee when he desired to visit the child. There is absolutely no evidence in the record that Mrs. Carnahan has refused Mr. Carnahan the right of visitation, nor is such a fact even alleged.

Mr. Carnahan made these payments from the time of the decree, all through the year of 1958, and into 1959, without complaint that the child had been removed.

As heretofore mentioned, appellee only asserted this defense on the day of the hearing, after previously setting up other defenses. It would appear that Mr. Carnahan's failure to pay was based on something other than the removal of the child to another state. However, no testimony was offered on behalf of appellee; in fact, the sole testimony in the hearing was offered by Mrs. Carnahan.

While appellant noted her exceptions to the entire order of the court, the notice of appeal relates only to that portion denying her the back payments. Likewise, this is the only point argued in the brief. Accordingly, we are not called upon to determine whether the court was justified in requiring the compliance bond, and in directing appellant to designate the clerk of the court as her agent for service in all matters relating to the custody and support of the minor child.

The court should have awarded appellant judgment for sums due for the following months of 1959: March, April, June, July, August, September, and October, or a total amount of $875. The decree is accordingly reversed, and the cause remanded with directions to enter judgment for appellant in the said amount of $875. Appellant's attorney is awarded an attorney's fee of $150. Costs against appellee.