MARGARET WRIGHT KIRKLAND *v.* JAMES G. WRIGHT

5-5069                                                 448 S. W. 2d 19

Opinion delivered December 15, 1969

*Brown, Compton, Prewett & Dickens*, for appellant.

*Ben Lindsey*, for appellee.

LYLE BROWN, Justice. On petition of James G. Wright the chancellor forgave accrued support money payments previously ordered for the minor children of the parties and suspended future reduced payments. That action was taken because the mother (the custodial parent) left the State, leaving their young boy with the father and taking the baby girl with her. The chancellor reasoned that the boy had been left behind to be supported by the father and that the girl's removal from the jurisdiction of the court defeated the father's visitation rights. On appeal Margaret Wright (Kirkland) contends that any modification of monthly support payments for the children cannot be made retrospectively. She also contends that the failure of the father to visit his daughter was due to his own indifference rather than the distance between the residences of the father and the daughter.

Mr. and Mrs. Wright resided in El Dorado. In 1957 the husband was awarded a divorce. The wife was given custody of their two children, Jimmie, age ten years, and Susie, age one year. The right to visit the children

"at all reasonable and seasonable times" was vested in the father. Mr. Wright was ordered to pay a regular monthly stipend of $100 to Mrs. Wright for the support of the minors. The court retained jurisdiction of the cause for the purpose of enforcing the rights of the parties. About February 1, 1967, Margaret, since remarried, moved to Texas. She took Susie with her. concededly without obtaining permission of the chancellor. Jimmie was left behind and in custody of his father. Two months thereafter James Wright petitioned for the rescission of the support money order. He alleged the removal of Susie from the court's jurisdiction, his responsibility for Jimmie, and his inability to exercise his visitation rights with Susie. That motion lay dormant for approximately one year, at which time Mrs. Wright (Kirkland) petitioned for a judgment for unpaid support money accruing since February 1967. The matter went to trial on the issues set forth in the two motions described.

It was stipulated that the mother, after remarriage, moved to Texas February 1, 1967; that she took Susie with her; that the mother was making no contribution to Jimmie's support, who was left behind with his father in El Dorado; that Jimmie is in college and is being aided financially by his father; that the father stopped paying support money when the mother moved away; and that Mr. Wright has at all times known the whereabouts of his daughter. The only witnesses at the trial were Mr. Wright and Jimmie, the latter being twenty-one years of age at that time. Wright testified that while the daughter lived in El Dorado he was prevented by the mother from visiting with the child. In that respect he was corroborated by the son. Wright testified that he received one letter after the move to Texas and that was from Mr. Kirkland. Wright conceded that he had not tried to correspond with his daughter or send her any presents. Just how long the Kirklands remained in Texas is not revealed but it was testified that from Texas, Mr. Kirkland was transferred

to Trinidad and his family accompanied him. We presume that is the reason Mrs. Kirkland did not return to testify. On the basis of the answers to request for admissions, the stipulation, and the testimony, the chancellor made these pertinent findings:

1.  That James Wright had timely paid the required child support until February 1, 1967;

2.  That on the last mentioned date the mother, without the permission of the court or the consent of the father, removed Susie Wright from the jurisdiction of the court, first moving to Texas and then to Trinidad;

3.  That Jimmie Wright was left in El Dorado with the father and the mother has not since contributed to Jimmie's support;

4.  That the child support should be reduced from $100 a month to $50 a month, and the latter payment suspended until Susie Wright is returned to the jurisdiction of the court so that visitation privileges could be afforded the father; and

5.  That the mother should be denied judgment for any support money payments which ordinarily would have accrued after February 1, 1967, the date of her departure, and to the date of trial.

The appellant, Margaret Wright Kirkland, concedes the court's authority to modify from time to time allowances for alimony and maintenance. Ark. Stat. Ann. § 34-1213 (Repl. 1962). However, it is urged that under our case law "the modifying decree relates to the future only and from time of its entry, not retrospectively."

*Sage* v. *Sage,* 219 Ark. 853, 245 S. W. 2d 398 (1952), appears to be the first case wherein this court squarely

faced the question, namely whether courts have the power to remit court-ordered accumulated support payments. That opinion cites the majority rule as reflected in 27B C. J. S. Divorce, § 322(1)c. Our court reached this conclusion, which is consistent with the majority rule:

> In our opinion the rule that courts have no power to remit accumulated payments under the circumstances here is a sound one and we adopt that view.

We now examine the circumstances in *Sage*. In the initial proceedings the mother was awarded custody of the two children, subject to visitation by the father, and $45 a month for their support. When the mother took the children to Virginia to live the father elected not to make the payments. Some months later there was a hearing on the father's petition for modification, at which time the accumulated support payments amounted to $450. The trial court relieved the father of that obligation. It was in that setting that this court reversed and announced the recited rule. We should mention that *Sage* made one concession to a father in like circumstances; the payment of accrued installments can be suspended (not forgiven) until the child is returned to the jurisdiction of the court.

Then came the decision in *Pence* v. *Pence,* 223 Ark. 782, 268 S. W. 2d 609 (1954). *Pence* is significant because it modified *Sage*. The modification has been so recognized. *Carnahan* v. *Carnahan,* 232 Ark. 201, 335 S. W. 2d 295 (1960). See 10 Ark. L. Rev. 470 (1956). *Pence* ordered the remission of payments accumulated during that period of time in which the mother had the child outside the court's jurisdiction *and concealed its whereabouts,* thereby totally defeating the father's visitation rights.

The decision in *Sage* is still the general rule and *Pence* has been treated as a modification and not an

overruling case. *Nicholas* v. *Nicholas,* 234 Ark. 254, 351 S. W. 2d 445 (1961); *Carnahan* v. *Carnahan, supra;* and *Brun* v. *Rembert,* 227 Ark. 241, 297 S. W. 2d 940 (1957). Circumstances may arise, as they did in *Pence,* where the equities in a given case require further deviation from the general rule in *Sage.* It should be remembered that we applied a general rule in *Sage* because "under the circumstances" in that case it appeared to be sound. The fact that the mother has not incurred any expense relative to the son since February 1967 has in truth tempted us to reduce the accruals by one-half and beginning with the date the father filed his petition in April 1967. Such remission appears to be sanctioned, under appropriate circumstances, by a majority of the courts passing on the question. 6 A. L. R. 2d 859 (1949). However, for reasons which we shall next point up, we do not think the facts before us justify any such deviation in this case.

It is argued that it is inequitable that Wright should be required to pay when (1) he was not permitted visitation rights with the daughter while she was in El Dorado, (2) the mother has not contributed to the support of the son since 1967. and (3) the daughter had for some twenty months been living a considerable distance outside the court's jurisdiction. A complete answer to those contentions is that Wright could have obtained any justifiable relief from his grievances by enlisting the aid of the court. He did file some pleadings in 1957 and 1966 for reduction but he makes no explanation why they remained dormant. He permitted the payments to accrue, payments which we have said become vested and which only the court has a right to change. *Sage* v. *Sage, supra; Riegler* v. *Riegler,* 246 Ark. 434, 438 S. W. 2d 468 (1969). Actually, Wright seems to have had no great desire to communicate with his daughter. He never formally pressed for visitation rights when she was in El Dorado; he made no attempt to see her when she was in Texas; and he has never sent her a seasonal card or a present. The three pleadings filed by the father over the

years indicate his paramount interest to be in obtaining a reduction in payments; they sought no enforcement of visitation rights.

In resolving the question of remission of accruals we have also considered another significant factor. The original support money order fixed the amount at $100 for the support of the children rather than a specific amount for each child. If that amount was to be changed because the mother did not take the son with her, it could not by the father be artibrarily cut in half; rather, it should have been presented to the court on the basis of the separate needs of the daughter.

Appellant is entitled to judgment for the unpaid accruals from February 1967 to the date of the trial. Because of unusual circumstances we agree with the trial court (but somewhat on a different basis) that the remittance of reduced monthly payments should be suspended. With the child in Trinidad it is hardly conceivable that "reasonable and seasonable" visitation rights, to which the father is presently entitled, can be effected. Secondly, the trial court has not really been apprised of the actual needs of the daughter. The best interests of the child dictate that the problems of visitation and proper support should be re-evaluated. This the court cannot do without the cooperation of the mother, either by her personal appearance or by deposition, whereby the court is supplied the facts necessary to a current appraisal of the problems. When that cooperation is forthcoming the trial court is authorized to remove the suspension.

Affirmed in part, reversed in part.