Nancy BETHELL *v.* John P. BETHELL, Jr.

79-332                                          597 S.W. 2d 576
Supreme Court of Arkansas
Opinion delivered April 21, 1980

*Brown & Etter,* P.A., by: *Robert J. Brown,* for petitioner.

*Lanny K. Solloway,* for respondent.

JOHN A. FOGLEMAN, Chief Justice. The parties were divorced after 14 years of marriage, by a decree of the Chancery Court of the Northern District of Arkansas County, entered on January 6, 1972. They had entered into a written settlement agreement dated January 4, 1972. The decree recited that the amounts set forth in the agreement with respect to alimony and maintenance to be paid to petitioner (plaintiff) by respondent (defendant) "as a means of dispensing with the proof upon those issues which are not now in dispute between the parties" were approved by the court to merge in the decree. Respondent was ordered to pay, subject to the further orders of the court, $700 per month alimony and $500 ($250 for each child) per month for support and maintenance of the two children born to the marriage.

On June 19, 1978, petitioner Nancy N. Bethell filed her "Motion for Contempt" alleging that respondent Dr. John P. Bethell, Jr., was $37,200[1] in arrears on the payments ordered and that he had failed to repay a loan of $4,200 for money she lent him. She asked that Dr. Bethell be held in contempt, that he be required to comply with the decree, that she recover the arrearage and the money lent, and that she be allowed attorney's fees.

Dr. Bethell denied petitioner's allegations and pleaded a private agreement between the parties reducing the alimony to $300 per month and alleged that Mrs. Bethell was estopped from getting equitable relief and that she had waived her rights under the divorce decree. Dr. Bethell alleged that he had been regularly paying petitioner $800 per month, of which $300 was alimony and $500 child support. He also alleged that Mrs. Bethell came into court with unclean hands and that she was seeking to perpetrate a fraud on the court. He also asked that his liability for alimony be terminated. After a hearing, the chancellor denied petitioner any relief as to the alleged arrearages and remitted them. She appealed to

---

[1] Later the amount demanded was reduced to $24,000, probably in recognition of the five-year statute of limitations.

this court on the ground that the parties had no power to modify either the agreement between the parties or the decree. We transferred the case to the Court of Appeals under Rule 29 (3), Rules of the Supreme Court and Court of Appeals (Ark. Stat. Ann. Vol. 3A, Repl. 1979). That court affirmed the decree of the Chancery Court. We granted certiorari to review the decision of the Court of Appeals on the ground that the case involved an issue of significant public interest and a legal principle of major importance. We affirm the decision of the Court of Appeals but do not fully agree with some of the opinion of that court.

It was stipulated that Dr. Bethell had paid $800 per month commencing about October, 1973, up through October 1, 1978 and that he had made a payment of $800 on November 15, 1978. Dr. Bethell paid the alimony and child support according to the terms of the decree for about 18 months. He said that Mrs. Bethell got all the money from the sale of their home and paid all the bills, leaving her about $20,000, which she referred to as her savings. He said that an irrevocable life insurance trust of $75,000 had been established for the benefit of Mrs. Bethell and their two male children. According to him, his gross income at the time of the divorce was $4,250 per month, before, and $2,500 per month after, taxes. He said that he could not continue paying $1,200 per month, keep the boys in private schools, pay his other obligations, and still pay his own living expenses. He testified that at the time of the divorce, he and Mrs. Bethell had a verbal agreement, resulting from her asking him, and his agreeing, to pay $1,200 per month, until she started teaching school, and then she would take a cut. Dr. Bethell testified that she suggested $400 per month alimony and $500 per month child support, but that when he suggested that the alimony be only $300 per month, she agreed. He said that it was implicit in that agreement that he would pay for the private schooling of the two boys, which he estimated amounted to $3,600 per year. He stated that in October, 1973, he reduced the payments to Mrs. Bethell in accordance with their verbal agreement. He said that, prior to that time, he had paid for private schooling for both boys, bus fares for visitations, clothes, shoes and insurance.

The written agreement between the Bethells is not fully abstracted, so we rely in part upon the terms of the agreement as they are disclosed by the decree of divorce and the testimony of the parties. We do know that there was a settlement of property rights and that a life insurance trust of some sort was involved.

Mrs. Bethell is 43 years of age. She had not wanted to strap Dr. Bethell forever with paying alimony if she could work and had agreed that, at the time she started working, he could cut the alimony back to $300 per month. She said that Dr. Bethell verbally agreed to pay tuition for both boys at the time that the total monthly payment was reduced to $800 per month, but that the educational requirement was not mentioned in the written agreement.

Petitioner asserts that the trial court erred in refusing to render judgment for the alleged arrearages in the payment of alimony to her as a result of the reduction of the payments from $700 to $300, contending that the reduction by Dr. Bethell was voluntary; that the parties had no power to tamper with the court's decree; that the agreement between the parties violated the statute of frauds because it was not in writing; and that there was no consideration for the agreement running to her.

Because of the admitted agreement between the parties, this case is not really a case in which the husband reduced alimony payments by his own unilateral action. Of course, he could not relieve himself of his obligation in this respect. See *Jerry* v. *Jerry,* 235 Ark. 589, 361 S.W. 2d 92; *Thompson* v. *Thompson,* 254 Ark. 881, 496 S.W. 2d 425. Furthermore, it is not a case where the trial court's powers of modification are barred because of the written agreement fixing the amount to be allowed, due to the fact that this was not an agreement independent of the decree; to the contrary, the agreement merely established an amount which the court should fix as alimony for the wife, without any intention of conferring upon the wife an independent cause of action on the contract. See *Lively* v. *Lively,* 222 Ark. 501, 261 S.W. 2d 409; *Adams* v. *Adams,* 223 Ark. 656, 267 S.W. 2d 778. The written agree-

ment specifically provided that it would merge into the divorce decree.

We do not think petitioner's points for reversal are actually pertinent to the real issues. Even though the chancellor in his opinion pointed out the parties made an oral agreement for reduction of the alimony, he based his remission of the arrearages upon the equities in the case on the bases of that agreement and Dr. Bethell's reliance upon it.

Our treatment of the question of an ex-wife's entitlement to judgment for arrearages in alimony and child support in cases presented to us, has not resulted in guidelines that are a model of clarity, nor has it provided a straight and easily recognizable path to be followed by trial courts, but the holdings in the various cases involving the question are not as inconsistent as they may seem upon superficial examination and "proof-text" reading.

Insofar as dealing with arrearages in payments is concerned, it has been pointed out that there is an analogy in cases involving alimony and those involving child support. *Brun* v. *Rembert,* 227 Ark. 241, 297 S.W. 2d 940. Within limitations attributable to the overriding concern of the courts for the welfare of children, cases involving child support arrearages have been considered as precedential in cases involving alimony arrearages and vice versa.

Perhaps the beginning point for all considerations of the power of the court to remit accumulated payments is *Sage* v. *Sage,* 219 Ark. 853, 245 S.W. 2d 398. We held then, and have consistently held thereafter, that entitlement to payment of either alimony or child support vests in the person entitled to it, as the payments accrue, as the equivalent of a debt due. See *Brun* v. *Rembert,* supra; *Riegler* v. *Riegler,* 246 Ark. 434, 438 S.W. 2d 468; *Kirkland* v. *Wright,* 247 Ark. 794, 448 S.W. 2d 19; *Holley* v. *Holley,* 264 Ark. 35, 568 S.W. 2d 487. *Sage* is sometimes cited and relied upon as authority holding that the chancery courts have *no* power to remit past due payments. Perhaps some of the language of that opinion can be taken argumentatively to support that position. It is very significant, however, that we clearly said that the courts have no

power to remit accumulated payments *under the circumstances* prevailing in that case. We did quote and rely upon a text-book statement that the court, on application to *modify* a decree of divorce, is without authority to reduce the amounts or modify the decree with reference thereto retrospectively, unless some reservation is made in the decree itself. A little later we decided *Antonacci* v. *Antonacci,* 222 Ark. 881, 263 S.W. 2d 484, in which we affirmed the chancery court's refusal to allow the mother judgment for unpaid installments of maintenance of the minor child of the parties. There was no mention of *Sage* and the reasons for the denial of the judgment were not clearly stated, although we said that there was no doubt the chancery court took into consideration the fact that permission was granted the mother to take the child to California and that there might be some expense to the father in the event he wished to visit the child in California. Shortly thereafter we decided *Pence* v. *Pence,* 223 Ark. 782, 268 S.W. 2d 609. This decision was by a fragmented court and that fact has undoubtedly led to some of the confusion on the question involved here. Three dissenting judges found no basis for denial of a judgment for past due child support, taking the position that the mother was entitled to the full amount she claimed. The prevailing plurality of three held that the mother had waived her right to claim repayment of the sums that she had expended for support of the child during the time the father was delinquent in payments. The payments according to the allowance in a 1942 decree had been stopped in May of 1945 and the mother sought judgment for the full period. This court gave judgment for the payments accruing between June 15, 1950, the date the mother brought the child back to Arkansas after an extended absence from the state, and October 29, 1953, the date of the hearing in the chancery court. This three-judge plurality justified denial of judgment for the period prior to June 15, 1950 on the basis that the mother kept the child outside the jurisdiction of the Arkansas court and thereby prevented the father from exercising visitation rights which had been agreed upon by the parties outside the divorce decree. The chancery court had denied judgment in any amount. Even the plurality opinion is not an overruling of *Sage.* That plurality stated that the issue in *Pence* was whether the law and facts in *Sage* required that the mother be given judgment for all the payments due and unpaid from

1945 to 1953. That plurality said that equity could not aid the mother in the situation that existed due to her deliberate decision to take the child to the Pacific Northwest without the permission of the chancery court and to the unsuccessful efforts of the father to find and visit the child. The plurality pointed out that, in a similar situation, a judgment had been denied in *Antonacci* v. *Antonacci,* supra. The seventh justice concurred and dissented on the basis that to require the father to pay the entire arrearage would be wholly inequitable. It was his position that the mother was barred by laches, as a species of estoppel, and upon the basis of several equitable maxims. He was of the opinion that the ex-wife should never have judgment for accumulated arrearages for more than one year prior to the commencement of an action to collect them. As a result, all that *Pence* really stands for as precedent is that judgment for arrearages can be denied where the party seeking a judgment has, by her conduct, barred herself from the aid of equity.

Another case that is often relied upon, along with *Sage,* is *Carnahan* v. *Carnahan,* 232 Ark. 201, 335 S.W. 2d 295. *Carnahan* is no more an absolute bar to denial of judgment for unpaid installments of alimony or child support than is *Sage.* In *Carnahan,* we took *Pence* to have modified *Sage,* but we were careful to point out that in *Sage* we held that the chancery court had no power to remit accumulative payments under the circumstances of that case. In *Carnahan,* we found that the facts did not justify withholding of judgment for past due child support because the father at all times knew the whereabouts of his child in the State of Mississippi, only 35 miles from the father's home, and visited the child there; that the mother did not refuse the father the right of visitation; and that the father continued to make support payments after the child had been removed. Thus we found the case distinguishable from *Pence.* We referred to *Allison* v. *Binkley,* 222 Ark. 383, 259 S.W. 2d 511, where we had held that a father was not relieved of his obligation under a court order to make child support payments *merely* because the child had been taken out of the state. *Riegler* v. *Riegler,* 246 Ark. 434, 438 S.W. 2d 468, has also been relied upon as holding that the trial court had no power to remit accumulated payments which had become vested as they became due, overlooking the

qualification that this holding was "under the circumstances of this case." The circumstance that had been relied upon by the chancellor to deny judgment for the full amount of arrearages was the fact that the daughter who was the subject of support had lived with her father for a year. The chancellor felt that this fact warranted relieving the father of a part of the arrearages. We did not agree.

In spite of the result in *Kirkland* v. *Wright,* 247 Ark. 794, 448 S.W. 2d 19, that case is sometimes cited as being contrary to our holdings in *Sage* and *Riegler.* In *Kirkland,* we reviewed some of our previous decisions and repeated our position that *Sage* was consistent with the majority rule and quoted the statement from that opinion that the rule that the courts have no power to remit accumulated payments "under the circumstances here" is a sound one and reviewed some of those circumstances. We again pointed out that we had recognized in *Carnahan* that *Pence* had modified *Sage* but we emphasized that the decision in *Sage* was still the general rule and that *Pence* should be treated as a modification and not as an overruling case, citing *Nicholas* v. *Nicholas,* 234 Ark. 254, 351 S.W. 2d 445, along with *Carnahan* and *Brun* v. *Rembert,* 227 Ark. 241, 297 S.W. 2d 940. In *Brun,* we had repeated the rule that once a child support payment falls due, it becomes vested and a debt due the payee, but that past due child support payments were not a judgment but only the right to a judgment.[2] We said in *Kirkland* that circumstances may arise, as they did in *Pence,* where the equities in a given case require further deviation from the general rule in *Sage* because " 'under the circumstances' in that case it appeared to be sound." We held, however, in *Kirkland* that the mother was entitled to judgment for the unpaid accruals from February, 1967, the date when payments were suspended, up to the date of trial.

In *Sharum* v. *Dodson,* 264 Ark. 57, 568 S.W. 2d 503, we recognized that a mother was entitled to judgment for unpaid installments of child support as a matter of right, except during such periods of time when she rendered the father's rights nugatory. While the language there used would seem too restrictive as a generality, it was pertinent in the particular

---

[2] We pointed out in *Brun* that the facts in *Pence* were vastly different from those in *Brun.*

case because of the defense asserted. *Kirkland* v. *Wright,* supra, was one of the authorities cited for this statement. In *Sharum,* the chancery court had awarded judgment for arrearages over a period of three years but had restricted the payments required on the judgment to $5 a month. Judgment had been sought for $11,180 for the period between October 11, 1966 and August 11, 1977. We recognized that there were periods when appellant would not have been entitled to enforce the support payments and that the chancellor had the option of awarding any amount that was justified by the evidence. Later, in *Holley* v. *Holley,* 264 Ark. 35, 568 S.W. 2d 487, we pointed out that in *Sharum* the basis for denial of judgment for the full amount of arrearages could have only been attributable to the actions of the mother. We also reiterated that *ordinarily* the chancery court has no power to remit accumulated court-ordered support payments. We further recognized in *Holley* that there are circumstances in which the chancery court is justified in withholding judgment for unpaid child support installments, such as the mother's depriving the father of temporary custody or visitation rights, citing *Pence* and *Massey* v. *James,* 251 Ark. 217, 471 S.W. 2d 770. We also again recognized that the conduct of a custodial parent might justify disallowance of judgment for the full amount of arrearages in child support payments.

From *Sage, Pence* and our subsequent decisions, we can say that, as a general rule, an ex-spouse is entitled to judgment for all past due installments of alimony awarded by a decree of divorce, not barred by the statute of limitations, unless equity cannot lend its aid because of the actions or conduct of the ex-spouse seeking judgment. We also take it to have been established that the spouse entitled to alimony can waive the right to recover the full amount of payments prescribed by the decree of divorce.

Dr. Bethell pleaded both waiver and estoppel as defenses. If either is established, then petitioner is not entitled to the aid of equity to collect the amounts she alleges to be arrearages. We have spoken not too long ago on the subject of waiver and its relationship to estoppel. In *Continental Ins. Cos.* v. *Stanley,* 263 Ark. 638, 569 S.W. 2d 653, we said:

Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely upon the right. \*\*\* The relinquishment of the right must be intentional. \*\*\*

Perhaps the term "waiver" in [this] context would more properly be termed estoppel, but the terms are often used interchangeably with reference to insurance contracts. *Sovereign Camp, Woodmen of the World* v. *Newsom,* 142 Ark. 132, 219 S.W. 759, 14 A.L.R. 903. A distinction was pointed out in that case, in which we recognized authority that estoppel against an insurance company may arise when the company's course of dealing with the insured and others known to the insured have been such as to induce a belief upon the part of the insured that a policy provision will not be insisted upon by the company. We quoted from *Sovereign* v. *Putnam* (Tex. Civ. App.) 206 S.W. 970-972 (1918) as follows:

"The terms 'waiver' and 'estoppel' are often used indifferently in the same sense, as if they were interchangeable terms; but there is a distinction which it is often important to keep in mind. Waiver presupposes a full knowledge of a right existing and an intentional surrender or relinquishment of that right. \*\*\* It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and provisions of a contract; but not so with estoppel.

" 'Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed. Waiver involves both knowledge and intention; an estoppel may arise where there is no intent to mislead. \*\*\* Waiver involves the acts and conduct of only one of the parties; estoppel involves the conduct of both. A waiver does not necessarily imply that one has

been misled to his prejudice, or into an altered position; an estoppel always involves this element. *** Estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy.' 40 Cyc. pp. 256, 257."

Furthermore, a waiver to be binding must operate either by way of estoppel or be based upon some consideration. *** [Citations omitted.]

It has been recognized that a wife may waive her right to a portion of the alimony and support provided her by a decree of divorce. *Graham* v. *Graham,* 174 Cal. App. 2d 678, 345 P.2d 316 (1959). The right of the wife to collect delinquent installments of alimony ordered by a divorce decree can be waived by the wife by agreement. *Gottesman* v. *Gottesman,* 202 So. 2d 775 (Fla. App., 1967); *Axelrad* v. *Axelrad,* 285 App. Div. 903, 138 N.Y.S. 2d 40 (1955). See also, *Oritzland* v. *Oritzland,* 6 App. Div. 2d 808, 175 N.Y.S. 2d 230 (1958). There may also be waiver by acquiescence, or it may be inferred from the circumstances. *Davis* v. *Davis,* 123 So. 2d 377 (Fla. App., 1960); *Graham* v. *Graham,* supra. It has also been held that the court has the power to ratify an agreement between the parties for a reduction in support payments. *Royster* v. *Royster,* 339 Ill. App. 250, 89 N.E. 2d 279 (1950).

The failure of a wife to take steps to enforce payment of alimony in accordance with the terms of a divorce decree for a long period of years is certainly an important fact to be considered in determining whether there has been a waiver of her right to enforce the decree according to its terms. *Graham* v. *Graham,* supra; *Axelrad* v. *Axelrad,* supra; *Brant* v. *Brant,* 23 Misc. 2d 646, 200 N.Y.S. 2d 643 (1960); *Schnierle* v. *Schnierle,* 33 Ohio Law Abstract 212, 33 N.E. 2d 674 (Ct. App., 1940). See also, *Royster* v. *Royster,* supra. It has been held that the courts will be inclined to find waiver if there is an undue delay by a wife in seeking to collect arrearages in alimony. *Herman* v. *Herman,* 17 N.J. Misc. 127, 5 A. 2d 768 (1939).

Long delay by a wife in invoking the process of the court to enforce a decree, may also give rise to an estoppel against her claiming accrued alimony. *Sonenfeld* v. *Sonenfeld,* 331 Mich. 60, 49 N.W. 2d 60 (1951); *Brant* v. *Brant,* supra.

This court has considered agreements between divorced parents for modification of decrees for payment of child support to be significant in determining whether there should be a judgment for arrearages on the basis of the difference in the amount provided for in the decree and the amount paid according to the agreement of the parties. In *Ray* v. *Manatt,* 250 Ark. 230, 465 S.W. 2d 111, we affirmed the action of the trial court denying judgment for such arrearages, largely on the basis that the evidence showed that there had been an agreement between the parties for a reduction. Even though there were facts which would have justified a reduction in the support payments if an application had been made to the court, the appellant wife in that case sought a reversal on the ground that the chancery court was without jurisdiction to allow retroactive cancellation of support money obligations. Obviously, we did not consider the limitation on chancery court jurisdiction in that regard to be absolute. Later, in *Thompson* v. *Thompson,* 254 Ark. 881, 496 S.W. 2d 425, we affirmed the trial court's action in granting a judgment for arrearages, in spite of the fact that there was an alleged agreement to reduce child support payments, on the basis that we could not say that the chancellor's finding with reference to the disputed agreement was contrary to a preponderance of the evidence. If the court's power to deny judgment for arrearages when there has been an agreement between the parties had been limited as petitioner contends it is in alimony cases, that case would have been much more easily disposed of without any consideration of the question of the preponderance of the evidence.

A sufficient consideration for waiver is afforded by the husband's failure to go to court to seek a reduction in the amount of the monthly payment in reliance upon the wife's agreement. *Schnierle* v. *Schnierle,* supra. The chancellor pointed out that the evidence indicated that Dr. Bethell would have sought relief from the court for a reduction in alimony had it not been for the agreement of the parties.

An agreement of the parties relating to the modification of a decree as to alimony should certainly be accorded no less favor than an agreement for reduction of child support payments. If the agreement here and petitioner's long delay are not sufficient to constitute a waiver by petitioner of the arrearages claimed, then there were both consideration and elements of estoppel. There should be no doubt about the right of Dr. Bethell to have obtained a reduction of alimony when Mrs. Bethell obtained employment. Dr. Bethell's reliance upon the agreement and the acquiescence of Mrs. Bethell certainly must have been instrumental in his not applying to the chancery court for a reduction in alimony payments. Furthermore, there have been changes in the circumstances of the parties, other than the full-time employment of Mrs. Bethell. Because of concern for his health, Dr. Bethell, who had practiced family medicine in Stuttgart, moved to North Little Rock in January, 1976, where he first worked in the emergency room of Memorial Hospital. After private practice with a group of physicians for a time, he returned to the emergency room as director. He found it necessary to borrow money to keep his children in school. He has remarried and his present wife is not now employed. They have one young child and were expecting another at the time of the hearing.

Mrs. Bethell has entered into a relationship she describes as very, very close with a gentleman 46 years of age, who is a bachelor and has been her constant companion for some seven years. He has assumed a great deal of responsibility for the Bethell boys, exerts a good influence over them and disciplines them. Mrs. Bethell, this gentleman and the boys go places together as a family. Trips taken by Mrs. Bethell and this gentleman have included journeys from Memphis, where they live, to Cape Hatteras and to Canada, on which either the boys or Mrs. Bethell's sister accompanied them. This gentleman takes many of his evening meals at Mrs. Bethell's residence and brings the food half the time. He does not contribute any money to the family or to its support and has no "set income." He thought that the parties might have become close again if he had not come along. He said that his relationship with Mrs. Bethell was more than casual, but not sordid. He thought that "most any normal people"

would have a romantic relationship. He felt that his attitude toward marriage would be more favorable than that of Mrs. Bethell, which he described as most guarded.

A party who by his acts, declarations or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *Hester v. Chambers,* 264 Ark. 941, 576 S.W. 2d 195; *Bowlin* v. *Keifer,* 246 Ark. 693, 440 S.W. 2d 232. He who, by his language or conduct, leads another to do what he would not otherwise have done shall not subject such person to injury by disappointing the expectation upon which he acted. *Peoples Nat'l. Bank* v. *Linebarger Const. Co.,* 219 Ark. 11, 240 S.W. 2d 12. If one, by his statements as to his intended abandonment of existing rights, designedly induces another to change his condition in reliance upon such statements, the person so stating will afterwards be estopped in his efforts to enforce his rights contrary to his declared intention to abandon them. *Peoples Nat'l. Bank* v. *Linebarger Const. Co.,* supra. The whole principle of equitable estoppel is that, when a man has deliberately done an act or said a thing, and another, who had a right to do so, has relied upon that act or word and shaped his conduct accordingly, and will be injured if the former repudiates the act or recalls the word, it shall not be done. *Gambill* v. *Wilson,* 211 Ark. 733, 202 S.W. 2d 185. A party claiming estoppel must prove that he has relied in good faith on the conduct of the party against whom the estoppel is asserted to his detriment. *Christmas* v. *Raley,* 260 Ark. 150, 539 S.W. 2d 405.

Dr. Bethell has clearly shown a waiver by Mrs. Bethell which is supported by both consideration and estoppel upon the basis of his reliance upon her actions. His detriment is found in his forbearance from instituting legal proceedings for the reduction of alimony based upon the obvious changes of circumstances and in his actions pertaining to his career and his personal life.

The decision of the Court of Appeals is affirmed.