Linda HUNT *v.* Thomas HUNT

CA 92-490                                          842 S.W.2d 470

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1992

*Tom Garner*, for appellant.

*Bill H. Walmsley*, for appellee.

ELIZABETH W. DANIELSON, Judge. Linda Hunt appeals from an order of the Fulton County Chancery Court reducing appellee Thomas Hunt's child support obligation for the parties' two minor children. We affirm.

The parties were divorced in May 1989, and in that decree, appellee was ordered to pay $160.00 every two weeks for the support of the children. That decree also incorporated an agreement of the parties requiring appellee to carry medical and dental insurance on the children. On September 3, 1991, appellee filed a petition for modification of his child support obligation, alleging a change in circumstances because of his decreased ability to pay.

At trial, appellee testified that he is fifty-six years old and has worked for Union Pacific Railroad for over twenty years. He testified that, in 1989, his take-home pay was $18,280.79; in 1990, it was $18,488.86; and in 1991, he received a three percent increase in gross pay. Appellee testified that, at the time of the divorce, he was working in Yellville and living in Bexar, a distance of approximately fifty-five miles. In August 1991, the railroad transferred appellee's headquarters to Branson, Missouri, and appellee now lives 140 miles away in Calico Rock, Arkansas. He stated that he does not drive back and forth each day but stays overnight and takes his meals at a motel in Branson from Sunday through Thursday. He stated that, at the time of the divorce, his 1988 Chevrolet four-wheel-drive truck was relatively new, but that it now has 111,000 miles on it and that its maintenance has become much more expensive. He stated that he needs to replace his truck and a new truck comparable to the one he now drives would cost him $287.02 for sixty months. Appellee admitted that he has not looked into the cost of a reliable, but less expensive, vehicle. Appellee introduced evidence that his weekly work-

related expenses in 1989 were $122.50; in 1991, they were $279.40, including fifteen meals at $6.00 per meal and five nights at a motel. Because appellee's position with the railroad is a "headquarter job," he is not reimbursed by his employer for these expenses. He also introduced evidence that the cost of maintenance on his vehicle rose from $7.50 per week in 1989 to $25.00 per week in 1991. Appellee testified that, in 1989, medical and dental insurance on the parties' children was provided by his employer but, in July 1991, appellee began paying $50.00 a month for this coverage. According to appellee, the increase in his travel and insurance expenses from 1989 to 1991 was $305.85 per month.

On cross-examination, appellee testified that he has a $9,500.00 savings account upon which he draws $500.00 to $600.00 interest per year but that he has had to withdraw $1,000.00 the past six months to meet expenses and obligations. In explaining why he maintains a home so far away from his work, appellee stated that he needs a place to stay on the weekends when he sees his children.

Appellant testified that she has recently changed jobs and brings home approximately $200.00 more per month than she did at her previous place of employment. Now, however, she pays $120.00 every two weeks for child care, and this new expense is more than the increase in her salary. She stated that she drives a total of forty miles to and from work each day in a 1983 Buick with 113,000 miles on it. She also testified that she helps support her oldest daughter, who is in college.

At the conclusion of the trial, the court took the case under advisement. On February 4, 1992, the chancellor entered an order in which he granted appellee's request for a reduction in his child support payments and ordered him to pay $120.00 twice a month. This modification has reduced the amount of support appellant is receiving by $106.00 per month. Appellant has appealed from this reduction of appellee's child support obligation and argues that the evidence does not support a finding of a change in circumstances.

A change in circumstances must be shown before a court can modify an order regarding child support, and the party seeking modification has the burden of showing a change in

circumstances. *Reynolds* v. *Reynolds*, 299 Ark. 200, 201-02, 771 S.W.2d 764, 765 (1989); *Ross* v. *Ross*, 29 Ark. App. 64, 67, 776 S.W.2d 834, 835-36 (1989). The assumption is that the chancellor correctly fixed the proper amount in the original divorce decree. *Id.*

> In determining whether there has been a change in circumstances warranting adjustment in support, the court should consider remarriage of the parties, a minor reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child support chart. *Thurston* v. *Pinkstaff*, 292 Ark. 385, 730 S.W.2d 239 (1987). However, there is no hard and fast rule concerning the specific nature of the changed circumstances. *Eubanks* v. *Eubanks*, 5 Ark. App. 50, 632 S.W.2d 242 (1982).

*Reynolds* v. *Reynolds*, 299 Ark. at 202, 771 S.W.2d at 765. In making this decision, the chancellor must consider the needs of one party as compared to the ability of the other to pay. *See McFadden* v. *Bramlett*, 270 Ark. 850, 852, 606 S.W.2d 375, 377 (Ark. App. 1980).

A chancellor's determination as to whether there are sufficient changed circumstances to warrant an increase in child support is a finding of fact, and this finding will not be reversed unless it is clearly erroneous. *See Freeman* v. *Freeman*, 29 Ark. App. 137, 139, 778 S.W.2d 222, 224 (1989).

In light of appellee's testimony, we find sufficient evidence of a change in circumstances to uphold the chancellor's reduction of child support.

Affirmed.

ROGERS, J., concurs.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. At a hearing on January 7, 1992, the appellee testified that his paycheck "runs between" $600 and $700 each pay day, and he gets paid twice a month. He has minor children whose custody was awarded to

their mother in a divorce decree entered on May 8, 1989. At that time, appellee was ordered to pay $160 every two weeks for child support. After the hearing in January 1992 the chancery court reduced appellee's child support payments to $120 every two weeks.

The appellant argues that the chancellor erred because the evidence does not support a finding that there has been a change in circumstances which supports the modification. I dissent from the decision of this court affirming the chancellor.

My dissent is based on the fact that the Arkansas Supreme Court, in accordance with Ark. Code Ann. § 9-12-312(a) (Repl. 1991), issued a per curiam opinion on February 5, 1990, adopting its most recent revision of the family support chart, *see In Re: Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589 (1990), and under that chart a monthly take-home pay of $1200 per month calls for monthly support payments in the amount of $325 for two dependents. Therefore, under the chart, the chancellor's order fixing appellee's support payments for his two children at $120 per month conflicts with the family support chart.

In *Black* v. *Black*, 306 Ark. 209, 812 S.W.2d 480 (1991), the Arkansas Supreme Court reversed and remanded a chancery court order which modified a previous support order. The Supreme Court said it was "unable to determine" whether the chancellor followed the correct procedure required by the court's per curiam order issued on February 15, 1990. The court stated under that per curiam:

> Reference to the chart is mandatory, and the chart itself establishes a rebuttable presumption of the appropriate amount which can only be explained away by written findings stating why the chart amount is unjust or inappropriate.

306 Ark. at 214. In *Cochran* v. *Cochran*, 309 Ark. 604, 832 S.W.2d 252 (1992), the trial court's modification of child support was reversed because the "sum and substance" of the chancellor's remarks in making the modification was that "the chart amount of $78 was unreasonable." The Arkansas Supreme Court said:

> Given the presumption that the chart amount is reasona-

ble, we believe it is incumbent on the trial courts to give a fuller explanation of their reasons for rejecting the chart. If appellate review is to have much significance, a greater account of why the chart is inappropriate under the circumstances of the case is essential.

309 Ark. 607.

In the present case, the trial court's order made no reference at all to the support chart. It is my view that the two cases quoted from above make it clear that trial courts *must* comply with the Arkansas Supreme Court's per curiam order of February 5, 1990. That order refers to Ark. Code Ann. § 9-12-312(a)(2) and provides, in accordance with that statute, that the amount of child support set out in the chart creates a rebuttable presumption that it is correct, and it is only by "a written finding or specific finding on the record," which states why the chart amount is unjust or inappropriate, that the trial court may deviate from the chart.

The appellant's argument, in the present case, is not specifically based upon the trial court's failure to consider or follow the family support chart. Apparently, that is why the majority opinion makes no mention of the chart or of the chancellor's failure to refer to the chart. However, I think the Supreme Court's decision in *Black* and *Cochran, supra*, and its per curiam of February 5, 1990, clearly indicate that trial courts *must* demonstrate that they have properly considered the chart and that the appellate courts should require that this be done, even if the attorneys do not raise the issue on appeal.

Therefore, I would remand for the trial judge to make written findings explaining his decision to deviate from the family support chart in this case.