Frankie Gene IRVIN *v.* Rhonda IRVIN

CA 93-610                                            883 S.W.2d 862

Court of Appeals of Arkansas
En Banc
Opinion delivered October 5, 1994

*A. Wayne Davis*, for appellant.

*Billy J. Hubbell*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from an order increasing appellant's child support obligation and awarding appellee an attorney's fee. For reversal, appellant contends that the chancellor erred in increasing child support; that the chancellor erred by not excusing his failure to attend the hearing; and, that the chancellor erred in concluding that appellee was entitled to an attorney's fee of $1,500. Because we agree with appellant's final issue, we affirm with modification.

The parties in this case were divorced in November of 1991. Pursuant to a child custody and property settlement agreement, appellee, Rhonda Irvin, was awarded custody of their twin sons who were born on March 25, 1989. According to the agreement, appellant, Frankie Gene Irvin, was obligated to pay the sum of $250 a month in support of the twins, and he was to be responsible for one-half of all medical expenses incurred on behalf of the children which were not covered by medical insurance.

On January 12, 1992, appellee petitioned the court for an increase in child support and the designation of a specific visitation schedule. Appellant responded to the petition, and on July 22, 1992, the court entered an order setting a hearing on September 23, 1992, at 9:30 a.m. Notice of the hearing was received by the parties' attorneys. Neither appellant nor his attorney, however, appeared at the scheduled hearing. Nevertheless, the chancellor proceeded with the hearing, and after listening to the testimony offered by appellee, the chancellor announced an increase in appellant's child support obligation to $505 a month. The chancellor also awarded appellee an attorney's fee of $1,500.

Before this decision was entered of record, appellant filed an objection to the entry of the proposed order, contending that his failure to appear at the hearing should be excused. After a hearing, the chancellor denied appellant's request for a new trial, and an order setting forth the chancellor's decision on appellee's petition was filed on January 28, 1993. This appeal followed.

As his first issue, appellant contends that the chancellor erred in increasing the child support payments in that there was

no showing of a material change in circumstances since the entry of the original decree. He also argues that the chancellor erred in setting the amount of support based on an estimated income of $25,000.

At the hearing, appellee testified that appellant had constantly harassed and threatened her since the divorce. She related that the harassment had culminated in an incident wherein she shot the appellant in defense of herself and the children after appellant had forced his way into her apartment at 2:00 a.m. She said that the authorities had determined that the shooting was justified, but she stated that the children needed counselling as a result of the shooting, which she could not afford. She also testified that the cost of medical insurance coverage for the children had increased, that both children now wear glasses, and that one child had undergone eye surgery the previous month. Appellee added that the cost of clothing the children had increased as they had grown older. She further related that, because of the persisting problems with appellant, her husband from a previous marriage had filed for a change of custody of their child and that he was seeking the payment of child support from her.

Appellee also testified that appellant never held a job when they were married, but that he, nevertheless, had always had money to spend. She said that during the marriage appellant paid cash for the purchase of such things as a $7,500 Firebird, a $13,000 mobile home, a $2,000 air conditioner, a living room suite, dishwasher, microwave, stereo and other various household items. She also stated that appellant had paid a $10,000 fine in Tennessee in connection with a charge of conspiracy to manufacture marijuana, as well as a related $5,000 attorney's fee. She further testified that appellant continued to have money to spend after the divorce. She said that appellant had purchased a Nissan Maxima, like the one she had bought at a price of $18,000. Appellee related that appellant had also boasted of purchasing his girlfriend a diamond ring for Christmas.

Based on this testimony regarding appellant's spending habits, the chancellor estimated that appellant had an income of at least $25,000. In accordance with the applicable child support chart, he increased appellant's child support payment to $505 a month.

■ Ordinarily, the amount of child support lies within the sound discretion of the chancellor. *Belue* v. *Belue*, 38 Ark. App. 81, 828 S.W.2d 855 (1992). The chancellor's findings as to child support will not be disturbed on appeal unless it is shown that the chancellor abused his discretion. *Id.* A chancellor's decision on whether to impute income must be based on the facts and circumstances of each case. *Grable* v. *Grable*, 307 Ark. 410, 821 S.W.2d 6 (1991).

■ A change in circumstances must be shown before a court can modify an order regarding child support; the assumption is that the chancellor correctly fixed the proper amount in the original decree. *Roland* v. *Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993). A chancellor's determination as to whether there are sufficient changed circumstances to warrant an increase in child support is a finding of fact, and this finding will not be reversed unless it is clearly erroneous. *Id.* In making this decision, the chancellor must consider the needs of one party as compared to the ability of the other to pay. *Hunt* v. *Hunt*, 40 Ark. App. 166, 842 S.W.2d 470 (1992).

■■ In this case, the chancellor had evidence before him that the needs of the children had increased since the entry of the divorce, as well as evidence demonstrating that appellant maintained the ability to provide for his children even though it would appear that he was not employed. In making our review, we observe that the original amount of support was set by agreement, and not by determination of the chancellor. We also observe, as the chancellor must have, that appellant was ostensibly without a job when the original provision was made for him to pay child support, and note that appellant has not sought abatement of his obligation upon any claim of hardship. The guidelines in the supreme court's *per curiam* on child support suggest that, when calculating income, it is appropriate to consider the amount a payor is capable of earning or a net-worth approach based on property, lifestyle, etc. *In Re: Guidelines for Child Support Enforcement*, 305 Ark. Appdx. 613 (1991). Given the testimony demonstrating that the children's needs have increased, we cannot say that the chancellor's finding of changed circumstances is clearly against the preponderance of the evidence. And, under the particular circumstances of this case, we find no abuse of discretion in setting the amount of support at $505 by imputing

an income of $25,000 based on the evidence of appellant's spending habits.

Next, appellant contends that the chancellor erred by overruling his objection to the entry of the order. At the hearing on the objection, appellant's attorney explained that he did not attend the hearing because he had another trial scheduled in Louisiana on the same date and also because of the unexpected death of his uncle. Counsel stated that he advised the appellant that he would obtain a continuance. He also related that he contacted appellee's attorney in an effort to have the hearing rescheduled, and that, when appellee's attorney refused, he attempted to reach the court, but was unable to do so.

In concluding that appellant's failure to attend the hearing was not excused, the chancellor observed that the hearing had been set for two months previously but that appellant's counsel had waited until the evening before the hearing to try to obtain a continuance. The chancellor noted that, had the Louisiana trial been set first, then counsel should have contacted the court shortly after receiving notice of the hearing in this matter, and that, if the Louisiana trial had been set after this hearing, it would not have been grounds for obtaining a continuance. The chancellor further noted that he phoned counsel prior to the hearing at the number counsel had left on his answering machine, and the chancellor indicated that he might have granted a continuance for counsel to attend his uncle's funeral, had he been able to reach counsel that morning. The chancellor noted, however, that counsel did not attend the funeral. In addressing appellant's complaint concerning appellee's counsel's refusal to agree to a postponement, the chancellor remarked that attorneys do not have the authority to grant continuances, and that counsel's refusal was simply a matter of representing his client's wishes.

In light of the chancellor's findings, we cannot conclude that the chancellor abused his discretion in denying appellant's request for a continuance or a new trial. In *Brown* v. *Mitchell*, 228 Ark. 106, 305 S.W.2d 854 (1957), the court said:

It is the duty of a litigant to keep himself informed of the progress of his case, and a party seeking relief against a judgment on the ground of unavoidable casualty or mis-

fortune preventing him from defending must show that he himself is not guilty of negligence, and he cannot have relief if the taking of the judgment appears to have been due to his own carelessness.

*Id.* at 109, 305 S.W.2d at 856 *(quoting Parker* v. *Sims,* 185 Ark. 1111, 51 S.W.2d 517 (1932)). Also, the matter of a continuance lies within the sound discretion of the court. *Sage* v. *Sage,* 219 Ark. 853, 245 S.W.2d 398 (1952). When the appellate court examines a discretionary decision made by the chancellor, the question is not what the appellate court would have done but whether, as a matter of law, discretion was abused — was the judgment call arbitrary or groundless. *Carter* v. *Carter,* 303 Ark. 70, 792 S.W.2d 597 (1990). In the case at bar, the chancellor, after hearing the explanation of appellant's counsel, found no reason why an additional hearing should be granted. We cannot say that this decision was without justification, and we affirm on this issue.

■ We need not address appellant's contention that he is entitled to another hearing because his failure to attend was at his attorney's direction because the argument is not supported by any citation to authority. *Barnes* v. *Barnes,* 311 Ark. 287, 843 S.W.2d 835 (1992). Nor do we address appellant's argument that he was denied due process because it is being made for the first time on appeal. Even arguments of constitutional dimension must be argued below if they are to be preserved on appeal. *Bright* v. *Gass,* 38 Ark. App. 71, 831 S.W.2d 149 (1992).

As his last point, appellant contends that the chancellor erred in awarding an attorney's fee in the amount of $1,500. We agree.

The record reflects that, when discussing the fee, the chancellor inquired of appellee's counsel as to why the requested fee of $1,500 exceeded the usual rate of $350 to $400. Counsel replied that the amount included services rendered to appellee in connection with the shooting incident. Counsel justified the inclusion of a fee for these services by stating that the advice offered concerning the shooting was related to appellant's violation of the restraining order. For this reason, the chancellor allowed the $1,500 fee.

■■ Our courts have recognized the inherent power of a court of equity to award attorney's fees in domestic relations

proceedings, and whether the chancellor should award fees and the amount thereof are matters within the discretion of the chancery court. *Paulson* v. *Paulson*, 8 Ark. App. 306, 652 S.W.2d 46 (1983). Our review of the record, however, discloses that there was no extant restraining order in this case. As a consequence, we do not think it is appropriate to include a fee for services rendered outside the domestic relations proceeding. Therefore, we modify the attorney's fee award to $400, a fee within the usual amount awarded as disclosed above.

Affirmed as Modified.

COOPER and ROBBINS, JJ., dissent.

JAMES R. COOPER, Justice, dissenting. I respectfully dissent. The appellee's request for increased child support was filed only two months following the divorce decree. The initial decree provided for child support of $250 per month. The modified decree more than doubled that amount, requiring monthly payment of $505.

The chancellor in the case at bar imputed an income of $25,000 to the appellant, in his absence, on the basis of testimony regarding a few alleged, isolated, expenditures. This figure was pure speculation, and there is nothing in the record to indicate that this is most likely the appellant's true income. *See Jacuzzi Brothers, Inc.* v. *Todd*, 316 Ark. 785, 875 S.W.2d 67 (1994). More importantly, there was absolutely nothing to show that the appellant's income had increased from the time of the original order. This flies in the face of the fundamental law governing such proceedings: it is assumed that the chancellor correctly fixed the proper amount in the original decree, and a change of circumstances from those obtaining at the time of the original decree must be shown before a court may modify an order regarding child support. *Roland* v. *Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993).

It may be argued that a change of circumstance could be found based on the need for psychological counselling for the children. However, the inescapable fact is that the chancellor based the increase in child support squarely upon a finding of increased income. The chancellor stated from the bench that his finding of changed circumstances relating to child support was

based on his estimate of a "$25,000 a year income, which would translate into support of $505.00 per month." There is no evidence of any circumstance that would permit the fact-finder to conclude that the appellant's income had doubled during the short period between the original order and the modified order. Although our sympathies may be with the appellee, we should not permit them to totally obscure the requirements of the law. Furthermore, we certainly are not penalizing anyone. The case should be reversed and remanded for a new trial so that both parties can produce evidence which actually shows the true financial picture, and I respectfully dissent.

ROBBINS, J., joins in this dissent.