Marilyn Moody SCHWARZ *v.* Randy Lee MOODY

CA 94-695                                    928 S.W.2d 800

Court of Appeals of Arkansas
Division II
Opinion delivered September 18, 1996
[Petition for rehearing denied October 23, 1996.]

*T.B. Patterson, Jr., P.A.*, for appellant.

No response.

JOHN F. STROUD, JR., Judge. In this one-brief case, appellant Marilyn (Moody) Schwarz appeals from a chancery court order entered on October 27, 1993. The order, among other rulings, denied her motions to change custody from appellee, Randy Lee

Moody, and to terminate child support. After appellant filed her notice of appeal, she requested and was granted various stays of appeal by this court while other matters were addressed by the chancellor. On November 17, 1994, the chancellor entered two additional orders. In one, he denied appellant's motion to recuse and supplemented a March 11, 1992, supplemental order by making definite the amount of attorney's fees appellant and her husband, Karl "Bill" Schwarz, had previously been ordered to pay appellee's attorney, David H. Williams. In the other, he sanctioned appellant, her husband Bill Schwarz, and their attorney T.B. Patterson, Jr., jointly and severally, for violations of ARCP Rule 11. Appellant filed her amended notice of appeal on November 28, 1994, in which Mr. Schwarz and Mr. Patterson joined pursuant to Rule 3(c) of the Rules of Appellate Procedure. We affirm the chancellor's rulings.

The background facts of this case are too long and tortuous to recount in great detail. It is sufficient to state that the parties were divorced in 1984. Custody of the two minor children was originally granted to appellant and then subsequently awarded to appellee. Their daughter, Brandi, was five years old at the time of the divorce. She is now seventeen. Appellant and appellee subsequently married each other's ex-spouses. The intervening years have been filled with vitriolic motions and hearings, culminating in this appeal.

## CHANGE OF CUSTODY

In her first point of appeal, appellant argues that the chancellor erred in denying a change of custody with respect to Brandi. There was no error.

On June 4, 1991, appellant filed a motion for change of custody. At that time, appellant and her husband, Bill Schwarz, were living in Virginia. Brandi made allegations of sexual abuse against her father, the appellee; however, she also subsequently recanted the allegations, explaining that her stepfather, Mr. Schwarz, had threatened to harm her mother, appellant, if Brandi did not make the allegations. There were also proceedings concerning these sexual-abuse allegations in the juvenile division of chancery court. The juvenile court dismissed the petition for lack of sufficient evidence. Brandi had also made allegations of sexually inappropriate conduct against Mr. Schwarz. The chancellor held approximately three days of hearings on the change of custody

request and other pending motions. The chancellor's March 11, 1992, order left custody with appellee, and ordered that Brandi remain temporarily with her paternal grandparents.

On May 17, 1993, appellant filed yet another motion "renewing" her motion for change of custody of Brandi. In it she alleged appellee was not cooperating in scheduling counseling for Brandi and consequently her therapeutic needs were not being met. Hearings on the motion were held June 7, 1993, and October 14, 1993. Brandi was represented by an attorney ad litem. Dr. Janice Church, a clinical psychologist, testified at the hearings on this motion. In the June 7, 1993, hearing she testified that she did not believe Brandi had received, nor would she receive, support for treatment while living with appellee; that, ideally, a more neutral living situation would allow Brandi to work on issues regarding appellant; that she did not feel it would be in Brandi's best interest to be with her mother, appellant, at that time; and that Brandi had never recanted to her the allegations of sexually inappropriate conduct involving Mr. Schwarz.

In the October 14, 1993, hearing Dr. Church testified that appellee had cooperated with counseling in the beginning but not recently; that she had not seen Brandi since April; that she was in a difficult position to answer where Brandi should be placed; and that she was not certain custody should be suddenly changed to appellant. After the October hearing, the chancellor entered his October 27, 1993, order. In it he determined that no sufficient change in circumstances existed to require a change in custody.

■■ In deciding a petition for change of custody, the chancellor must first determine whether there has been a significant change in the circumstances of the parties since the most recent custody decree. If a significant change has occurred, then the chancellor determines custodial placement with the primary consideration being the best interest of the child. *Riley* v. *Riley*, 45 Ark. App. 165, 873 S.W.2d 564 (1994). Although we review chancery cases de novo, we do not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence. *Id*. Since the question of the preponderance of evidence turns largely upon the credibility of the witnesses, this court defers to the superior position of the chancellor to make such determinations. *Id*. Child custody cases cast a heavier burden upon the chancellor to utilize to the fullest extent all powers of perception in evaluating the witnesses,

their testimony, and the children's best interests. *Clark* v. *Reiss*, 38 Ark. App. 150, 831 S.W.2d 622 (1992). We have reviewed this case de novo. The chancellor's finding that there was no significant change in the parties' circumstances was not clearly against the preponderance of the evidence. We defer to his superior position in this case to determine the credibility of the witnesses and the best interests of the child.

## CHILD SUPPORT

In her second point of appeal, appellant argues that the chancellor erred in refusing to terminate child support. In the March 11, 1992, order the chancellor ordered appellant to pay child support in the amount of $30.00 per week and one-half of medical expenses not covered by insurance. He did so despite the fact that she was unemployed. Appellant asserts that although she was unemployed when such support was awarded in 1992, she had become unable to work by the time the October 27, 1993, order was entered. She maintains that those circumstances represent a significant change which warranted the termination of support. We disagree.

A change in circumstances must be shown before a court can modify an order regarding child support. *Irvin* v. *Irvin*, 47 Ark. App. 48, 883 S.W.2d 862 (1994). A chancellor's determination as to whether there are sufficient changed circumstances to warrant a change in child support is a finding of fact, and this finding will not be reversed unless it is clearly erroneous. *Id.* Appellant was unemployed when the support amount was first set. She remained unemployed when the chancellor refused to terminate support. The chancellor's finding that appellant's inability to work did not represent a significant change in circumstances is not clearly erroneous. *See Barnes* v. *Barnes*, 311 Ark. 287, 843 S.W.2d 835 (1992) (finding no error when chancellor set support at the minimum level required of an unemployed person). In fact, if appellant is now unemployable rather than merely unemployed, there exists the possibility she may be entitled to monetary benefits that would not previously have been available to her.

## ATTORNEY'S FEES

The third point of appeal challenges the chancellor's award of attorney's fees, arguing that they should be set aside as an abuse of discretion, as outside of the chancellor's jurisdiction with respect to Bill Schwarz, and as lacking proof of amount. Furthermore, the

chancellor's finding that the fees were so intertwined with custody and support issues as to be directly related to support is challenged. The arguments have no merit.

■ We have recognized the inherent power of a court of equity to award attorney's fees in domestic-relations proceedings. *Irvin* v. *Irvin*, 47 Ark. App. 48, 883 S.W.2d 862 (1994). Whether to allow such fees and in what amounts are matters within the chancellor's discretion. *Price* v. *Price*, 29 Ark. App. 212, 780 S.W.2d 342 (1989). In the absence of a clear abuse of discretion in fixing the fee, we will not disturb the chancellor's decision on appeal. *Id.* After carefully reviewing the voluminous record in this case, we find no clear abuse of discretion.

The chancellor awarded attorney and other professional fees in the supplemental order filed March 11, 1992. Specific dollar amounts were entered for the other professional fees, but not for attorney's fees. However, the percentage basis of the award and the persons charged with its payment, the Schwarzes, were set forth. During the December 1991 hearing that resulted in the March 11, 1992, order the only issue raised with respect to the court's award of attorney's fees challenged any connection of those fees to child support. No other issue argued here was raised at that hearing. Ordinarily, we would dispose of those issues on that basis alone. However, subsequent events in this unique case make it necessary to set forth additional facts and other bases for our affirmance.

At the time of the December 1991 hearing, two cases were being tried together before the chancellor. One was the instant case, which involved appellant, Marilyn (Moody) Schwarz, and appellee, Randy Moody. The other case involved Bill Schwarz and Lois (Schwarz) Moody, appellee's wife. Mr. Patterson represented both Marilyn and Bill Schwarz in their respective cases.

The Schwarzes subsequently filed for bankruptcy. Mr. Williams was listed as a creditor in the Chapter 7 bankruptcy filed by appellant and her husband, even though the exact amount of his fees was not then known. One of the pleadings from the bankruptcy proceedings was entitled, "Stipulation by the Parties." Included in the stipulations was the fact that Mr. Floyd Healy, the Schwarzes' bankruptcy attorney, had examined Mr. Williams's files and records concerning his services rendered in the chancery case and in the juvenile proceedings, and that they contained sufficient

documentation to support Mr. Williams's affidavit for services in the amount of $16,794.56. By order entered September 12, 1994, the bankruptcy court ruled on a motion filed by the debtors, Bill and Marilyn Schwarz:

> After hearing arguments, this Court finds that the motion is without merit and will deny the same. The chancery court by previous order determined that 80% of the plaintiff's legal services were in the nature of support. This Court conducted an evidentiary hearing on July 29, 1994 and at this hearing, the parties stipulated that the plaintiff's files and records contained sufficient documentation to sustain the plaintiff's request for 80% of $16,794.56 and is entitled to an award and judgment of $13,435.65 which is non-dischargeable.

The parties subsequently returned to chancery court and, following two hearings, the chancellor entered the November 17, 1994, order that set forth the specific amount of attorney's fees owed by the Schwarzes to Mr. Williams, $13,435.65. An amended notice of appeal was then filed in which Bill Schwarz joined pursuant to Appellate Rule of Procedure 3(c).

█ We first address the argument that Bill Schwarz was outside the chancellor's jurisdiction regarding attorney's fees. Not only has Mr. Schwarz provided us with no authority or convincing argument regarding this issue, we cannot discern any. See *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977) (assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal unless it is apparent without further research that they are well taken). The cases were tried together, and both Marilyn and Bill Schwarz were represented by the same attorney. Furthermore, we endorse the chancellor's following determination:

> [O]n the basis that I'm tired of dancing around about this thing that I've been doing since I took this office several years ago. That Bill Schwarz has driven this thing from the start. That he doesn't want to pay. He's trying to dodge it. It's unjust. It's unfair. It causes a lot of trouble for a lot of people. It clogs up the docket in this court. He has lost, and he can't accept it.

█ The arguments regarding the chancellor's abuse of discre-

tion and an alleged failure of proof regarding the amount of fees are without merit. Any problems with the March 1992 supplemental order regarding the lack of a specific dollar amount were cured by the subsequent events in this case. The debt was recognized and listed in the subsequent bankruptcy proceedings. Bill and Marilyn Schwarz stipulated through their attorney via pleadings submitted in the bankruptcy case that "Mr. Williams' files and records did contain documentation sufficient to sustain his affidavit for services rendered in the sum of $16,794.56." The bankruptcy court relied upon those stipulations in determining the amount of the fees. In the absence of fraud, a client is bound by the acts of his attorney within the scope of his authority. *White* v. *White*, 50 Ark. App. 240, 905 S.W.2d 485 (1995). The chancellor entered the same amount as the bankruptcy court in the chancellor's November 1994 order, following additional hearings on the matter in chancery court. Bill and Marilyn Schwarz cannot now deny the accuracy of this stipulated amount. *See Daley* v. *City of Little Rock*, 36 Ark. App. 80, 818 S.W.2d 259 (1991); *Womack* v. *Womack*, 73 Ark. 281, 83 S.W.2d 938 (1904).

■ Finally, the chancellor's finding that the attorney's fees were so intertwined with custody and support issues as to be directly related to support is challenged. Once again, the argument has no merit. A chancellor is not limited to support issues in awarding attorney's fees in a domestic-relations proceeding. Moreover, the chancellor's use of the phrase, "so intertwined" does not necessarily mean the fees represented a majority of time devoted exclusively to support. Rather, it can as easily mean merely that the fees were "so intertwined" as to directly relate to support.

## SANCTIONS

The fourth point of appeal asserts that the chancellor erred in awarding sanctions under ARCP Rule 11 against Marilyn Schwarz, Bill Schwarz, and Mr. Patterson, jointly and severally. There was no error.

ARCP Rule 11 provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for

the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

When a violation of Rule 11 occurs, the rule makes sanctions mandatory. *Crockett* v. *Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995). Whether a violation of Rule 11 occurred is a matter for the court to determine, and this determination involves matters of judgment and degree. *Id*. In reviewing a trial court's determination, we do so under an abuse of discretion standard. *Id*.

In addressing this point we note again the protracted nature of this case. Brandi was five years old at the time of her parents' divorce and she is now seventeen. The intervening years have been filled with various allegations, pleadings, and hearings. The pleading that resulted in sanctions may well be regarded as the straw that broke the camel's back. The backs of many camels would have broken much sooner. The brief submitted in this case acknowledges that the provisions of ARCP Rule 11 are designed to stop the needless delay and expense of pleadings interposed without a good faith belief in their validity. The brief also acknowledges that the pleading in question raised "what may be considered technical defenses," including standing, laches, jurisdiction, and inequitable enforcement. There was no abuse of discretion in the chancellor's award of sanctions in this case.

## RECUSAL

Appellant's final point of appeal is that the chancellor should have recused. The argument has no merit.

The chancellor disclosed early in the proceedings that he knew appellee's brother, an attorney, and that the brother's office had been located close to that of the chancellor's. Disqualification is discretionary with the judge, and the court's decision in that regard will not be reversed absent an abuse of discretion. *Korolko* v. *Korolko*,

33 Ark. App. 194, 803 S.W.2d 948 (1991). The party seeking disqualification bears a substantial burden to prove partiality. *Id.* There was no abuse of discretion in the chancellor's refusal to recuse on this basis.

Appellant acknowledges that no prejudice could be shown with respect to any particular ruling, but argues that the "cumulative effect" demonstrated bias. Only external matters are considered for purposes of recusal. Otherwise, antagonizing judges would become a tool of trial strategy. The development of opinions, biases, or prejudices during a trial does not make the trial judge so biased as to require his or her disqualification from further proceedings. *Allen* v. *Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987). See also *Carle* v. *Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993).

### ABSTRACTING ABUSES

We cannot ignore the abstracting abuses of appellant's counsel. Excessive abstracting is as violative of our rules as omissions of material pleadings, exhibits, and testimony. *Saint Paul Fire & Marine Co.* v. *Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995). Appellant's abstract consisted of three volumes, totaling 575 pages. Much of this information could have been abridged or deleted for purposes of this appeal. This court's efforts to resolve this matter on appeal would have been aided considerably by the scrupulous adherence to our abstracting rule. See Sup. Ct. R. 4-2(a)(6).

### MOTION

Mr. David H. Williams filed a motion to dismiss this appeal. We considered and denied the motion.

Affirmed.

ROBBINS and GRIFFEN, JJ., agree.